Kenneth WILLIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 785S285.

Supreme Court of Indiana.

July 28, 1987.
Rehearing Denied Oct. 29, 1987.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Kenneth Willis, was convicted by a Marion County jury of robbery, a class B felony, and conspiracy to commit robbery, a class B felony. The trial court sentenced Appellant to twenty (20) years on each conviction, both sentences to run consecutively. In this direct appeal, Appellant raises the following issues for our consideration:

1. sufficiency of the evidence;

2. error in admitting State's exhibit 40 into evidence;

3. error in giving final instructions 2, 14, and 15;

4. error in considering the conviction records of one Kenneth Payton at the sentencing hearing, and,

5. five other errors raised in Appellant's *pro se* motion to correct errors.

The facts supporting Appellant's conviction are as follows. On March 16, 1984, at approximately 11:30 a.m., two men entered the Speedway Branch of Merchant's National Bank and announced a hold-up. One man stood at the entrance of the bank and held a gun over the people inside. This man was wearing a paper sack over his head with holes cut in the bag so he could see. The other man vaulted over the bank counter and started filling a blue Adidas

gym bag with money. This man was wearing a maroon ski mask. After about thirty seconds, the gunman said, "Time's up, let's move," and the two men fled. They ran down an alley, got into a red Ford automobile, and sped away.

The police arrived and took statements from the numerous witnesses. Several witnesses were able to pick Appellant's photo out of a photographic array. An arrest warrant was issued and Appellant was arrested. At a police line-up, two witnesses picked Appellant as the man who jumped over the counter and took the money from the cash registers.

Appellant's trial consisted of the identification testimony of several eye witnesses, the testimony of the police investigators, and the testimony of Samual Ricketts, Jr., who was Appellant's accomplice in this robbery. Ricketts testified he and Appellant met in a bar and agreed to rob a bank. His testimony corroborated that of the other witnesses for the State.

Appellant's defense consisted of two witnesses who were incarcerated with Ricketts after the robbery. Each inmate testified Ricketts told them his uncle, Harmon Gray, was the accomplice in this robbery.

I

First, Appellant argues his convictions are not supported by sufficient evidence. Specifically, he argues 1) the State's case was based entirely on circumstantial evidence, 2) Ricketts' testimony was suspect, 3) three of the State's witnesses had difficulty identifying Appellant, and 4) the photographic array and line-up were suggestive and thus tainted.

When the sufficiency of evidence is challenged on appeal, this Court looks only to the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. We will not reweigh the evidence nor will we determine the credibility of the witnesses. If we find substantial evidence of probative value to support the conviction beyond a reasonable doubt, the conviction will be affirmed. *Anderson v. State* (1984), Ind., 469 N.E.2d

1166, 1169; *Williams v. State* (1982), Ind., 433 N.E.2d 769, 774.

■ Here, the State's case was based on the direct testimony of the eye witnesses and not circumstantial evidence as Appellant suggests. Concerning Ricketts' testimony, we have held that the uncorroborated testimony of an accomplice who testifies pursuant to a plea agreement is sufficient to sustain a conviction. *Davis v. State* (1985), Ind., 472 N.E.2d 922, 925. Here, Ricketts' testimony fully corroborated the testimony of the eye witnesses. Further, when the jury is informed that an accomplice is testifying pursuant to a plea agreement, and the provisions of the agreement are disclosed to the jury, it is up to the jury to determine the weight and credibility to be given the accomplice's testimony. *Kelley v. State* (1984), Ind., 460 N.E.2d 137, 138. Here, the provisions of Ricketts' plea agreement were fully disclosed to the jury.

■ Some of the eyewitnesses had trouble identifying Appellant given the fact that he wore a ski mask during the robbery. However, two witnesses did get a glimpse of Appellant's face and were able to positively identify him after the robbery. Also, all the testimony of the eyewitnesses who had trouble identifying Appellant was presented to the jury. These facts go to the weight of their testimony. It was the jury's responsibility to weigh this identification testimony and we will not second-guess their determination.

■ Finally, Appellant has failed to give us anything of substance to support his allegation that the photographic array and lineup were suggestive. Bare assertions of error with nothing more are not available for appellate review. *See Howard v. State* (1985), Ind., 481 N.E.2d 1315, 1317; *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 486. Further, Appellant did not object to this evidence at trial, and so, any error here is waived. *Johnson v. State* (1985), 472 N.E.2d 892, 910. We find the evidence sufficient to support Appellant's convictions.

## II

State's exhibit 40 was a photograph of Harmon Gray, Samual Ricketts' uncle. The photo was introduced during the State's rebuttal case by Detective Ellwanger. Appellant objected to the introduction of the exhibit on hearsay grounds. Detective Ellwanger had testified he obtained the photo of Harmon Gray from official police files. Thus, the State contended the photograph was admissible under the business records exception to the hearsay rule. *See McBrady v. State* (1984), Ind., 459 N.E.2d 719; Ind.Rules T.Pro. 44. Appellant's objection should have been that foundation for the exhibit was lacking. Before the business records exception comes into play, the witness must show that the exhibit is part of records kept in the routine course of business, and placed in the record by an authorized person having personal knowledge of the transaction represented at the time of entry. *McBrady*, 459 N.E.2d at 723–24. Had Appellant objected that foundation was lacking, the State would then have had the opportunity to provide an adequate foundation. An objection must be specific in order for the issue to be preserved for appellate review. *Johnson*, 472 N.E.2d at 911.

Further, Appellant fails to show how he was prejudiced by the admission of the photo. There was other testimony, without objection, that Harmon Gray was Ricketts' uncle. Also, in view of the strong evidence of Appellant's guilt here, the admission of this exhibit was harmless.

## III

Next, Appellant claims the trial court erred by giving final instructions 2, 14, and 15.

Final instruction 2 read:

"A person who is convicted of a crime by a jury is sentenced by a judge. By law the judge must hold a sentencing hearing in which a written pre-sentence report and all matters in mitigation and aggravation are considered. After the hearing the judge may have various sentencing alternatives, including imprisonment within a certain range. That is why these instructions do not contain any information concerning the penalties that could be imposed upon a conviction."

Appellant claims this instruction was misleading and confusing because it implied Appellant might not be imprisoned if found guilty. We disagree. There is no inference in the instruction that Appellant might not be imprisoned if found guilty. Further, the instruction is a correct statement of the law. Only the trial court has authority to determine the proper penalty to be given upon a conviction. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96, *cert. denied* —— U.S. ——, 106 S.Ct. 1241, 89 L.Ed.2d 349; Ind.Code § 35–50–1–1 (Burns 1985). The trial court did not err by giving this instruction.

Instruction 13 was submitted by Appellant, and read over the State's objection. The instruction read:

"The State called as one of its witnesses an alleged accomplice with whom the State has entered into plea agreement providing for a lesser sentence than he would otherwise be exposed to for the offense to which he plead guilty. Such plea bargaining, as it is called, has been approved as lawful and proper.

An alleged accomplice, including one who has entered into a plea agreement with the State, does not thereby become incompetent as a witness. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.

The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person."

Instructions 14 and 15 were offered by the State and given over Appellant's objection. These instructions read:

"INSTRUCTION NUMBER 14

"Testimony of an accomplice

"An accomplice witness is one who testifies that he was involved in the commission of the crime with the defendant.

An accomplice is competent as a witness for the State or the defendant in the trial of a criminal cause. The testimony of an accomplice is to be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness."

### INSTRUCTION NUMBER 15

"A conviction may be based entirely upon the testimony of an accomplice, and a co-conspirator is an accomplice and is a competent witness."

Appellant argues instructions 14 and 15 were repetitive of instruction 13, and placed undue emphasis on the accomplice testimony phase of the case.

 It is generally improper for a trial court to emphasize a particular phase of a case by emphasizing certain propositions of law in its instructions. *Coleman v. State* (1984), Ind., 465 N.E.2d 1130, 1133. However, in order to constitute reversible error, the instructions must be so repetitive as to violate the rights of the defendant in that the instructions become an argument of the court on one particular phase of the case. *Id.* In *Johnson v. State* (1972), 258 Ind. 683, 284 N.E.2d 517, we stated:

"Certainly all phases of the law cannot be covered in a single instruction. By their very nature there is a certain amount of repetition in the instructions when taken as a whole. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper."

*Id.* at 687, 284 N.E.2d at 519. We believe the three instructions in question here, taken in conjunction with all the other instruction given, were not so repetitious as to place undue emphasis on the accomplice testimony. This is particularly true when the instructions have been submitted by both parties. All three instructions were correct statements of the law. It appears the court instructed on both of the parties' theories on this issue and we accordingly see no error.

### IV

At the sentencing hearing, the State introduced exhibit A; a certified record of a 1977 conviction for bank robbery by one Kenneth Payton, issued in the United States District Court, Eastern District of New York. Appellant argues the trial court erred in considering this exhibit because there was no evidence that Appellant was also known as "Kenneth Payton." We disagree.

The record reflects that before the trial started, the trial court granted the State's motion to amend the information to read: "Kenneth Lee Willis a/k/a Kenneth L. Payton." Appellant did not object to this. The pre-sentence report indicates Appellant told the probation officer that he had been arrested and convicted for bank robbery in 1977 in New York. In addition, the report shows Appellant's family name is "Payton", and Appellant's seven-year-old son's name is "Kenneth Payton, Jr."

 Appellant concedes the trial court has statutory authority to consider his past criminal activity before sentencing. *See Lang v. State* (1984), Ind., 461 N.E.2d 1110, 1114; Ind.Code § 35–38–1–7 (Burns 1986). When past criminal activity is introduced, the defendant retains the right to refute any accurate or improper information. *Lang*, 461 N.E.2d at 1114. Nowhere does Appellant contend he is not the Kenneth Payton charged with the 1977 bank robbery in New York. Rather, Appellant admitted to committing that crime. We therefore find no error here.

### V

Finally, Appellant lumps together five alleged errors which he raised in his *pro se* motion to correct errors. We have reviewed these allegations, and find them to be without merit.

#### a. Suggestive Lineup

 Appellant filed a motion to suppress the lineup identification which the trial court denied after a hearing on the issue. At trial, Appellant failed to object

to the lineup identification testimony. Any error has therefore been waived. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 910.

b. Testimony Regarding Marks on Appellant's Arm

Detective Hawkins testified he observed "an area that appeared to be an injection site" on Appellant's arm when he was arrested. Appellant objected and moved for a mistrial. The trial court admonished the jury to disregard the detective's comment.

 A prompt admonishment is presumed to cure any alleged error. *Johnson*, 472 N.E.2d at 904. Appellant has failed to show us that the detective's comment placed him in a position of peril so grave that it could not be cured by the trial court's admonishment. *See Walker v. State* (1986), Ind., 497 N.E.2d 543, 544. Further, when a photograph of Appellant's arm was admitted into evidence, Appellant failed to object. Appellant concedes any error here has been waived.

c. Threatening of Defense Witnesses

During trial, Appellant alleged the State was intimidating several of his witnesses by threatening them with perjury charges if they testified. However, Appellant concedes that no objection or motion was made and, therefore, any error is waived.

d. Jury Read Wrong Information

Appellant claims the trial court erred by reading the information which stated that this robbery was committed while the defendants were armed with "weapons." Appellant claims there was no evidence that he was armed, or that two handguns were used in the robbery. However, Appellant again concedes that his failure to object waives any error.

e. Confession Obtained by Force and Intimidation

Finally, Appellant argues in his brief and amended brief that at the time of his arrest, he was physically battered by an unknown officer of the Marion County Sheriff's Department. The record indicates that an officer from the drug investigation unit of the department began to choke Appellant when Appellant indicated the money taken in the robbery had been used to buy drugs which had been consumed. The officer was then removed from the scene by other officers. Appellant was taken to the police station for interrogation. While agitated over this incident, Appellant nonetheless signed a waiver of his *Miranda* rights. He then tried to make a deal with the police.

At trial, Officer Hawkins testified that Appellant wanted to "walk away" from these charges in exchange for information on the location of Samual Ricketts. The deal was refused. Appellant claims this testimony violated his *Miranda* rights because his "confession" was procured through violence and threats. We note that Appellant has filed a civil rights action in the Federal Court as a result of the beating incident. That action is still pending.

 While an accused's confession may not be procured through violence or threats which overcome his free will, the admissibility of a statement is determined by examining the totality of the circumstances to establish whether the statement was given voluntarily. *Wagner*, 474 N.E.2d at 484; *Tawney v. State* (1982), Ind., 439 N.E.2d 582. There is no indication here that Appellant's statements were the result of the attack by the unknown officer. Appellant was described as agitated, but signed a waiver of his rights and attempted to strike a deal with the police. Further, Appellant failed to object to this testimony when offered by Officer Hawkins. Our conclusion is that Appellant's statements were voluntary and admissible.

Finally, we note that Appellant received aggravated sentences on both of his convictions. On May 14, 1987, we ordered the trial court to make a *nunc pro tunc* entry stating its reasons for aggravating Appellant's sentences. On July 8, 1987, the trial court complied with our order. We have reviewed the trial court's written findings and find they are sufficient to justify the

imposition of aggravated sentences in this case.

Finding no error, we affirm the trial court.

SHEPARD, C.J., DeBRULER, GIVAN and DICKSON, JJ., concur.