# FOR PUBLICATION



FILED

Sep 25 2012, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEY FOR APPELLANT:

**SUSAN E. SCHULTZ**
Corydon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES HALL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 13A04-1111-CR-622 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable K. Lynn Lopp, Judge
Cause No. 13C01-1104-FB-3

**September 25, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A deputy with the Crawford County Sheriff's Department attempted to initiate a traffic stop of a vehicle driven by Charles Hall. Hall, who was driving with a suspended license and also had an active methamphetamine lab in his vehicle, led the deputy on a high speed chase. Hall ultimately drove the vehicle off the road, left it in a field, and fled on foot. When the deputy found the vehicle, he had another deputy conduct an inventory search in preparation for impoundment. When the deputy discovered evidence of a methamphetamine lab in the vehicle, he turned the search over to the State Police's clandestine lab team. The search uncovered an active methamphetamine lab, finished methamphetamine, and various precursors. Hall was ultimately convicted of and sentenced on four offenses: dealing in methamphetamine, possession of precursors, operating a vehicle after a lifetime suspension, and resisting law enforcement. The trial court imposed an aggregate sentence of twenty-four years.

On appeal, Hall argues that the inventory search violated his Fourth Amendment rights, and therefore the evidence obtained from the vehicle should have been excluded. He also argues that his sentence is inappropriate. We conclude that Hall abandoned his vehicle; therefore, the search did not implicate the Fourth Amendment. In light of Hall's highly dangerous conduct and his lengthy record of convictions relating to driving and/or drug use, Hall has not persuaded us that his sentence is inappropriate. Therefore, we affirm.

## Facts and Procedural History

On April 5, 2011, while he was off duty, Deputy Shawn Scott of the Crawford County Sheriff's Department was at a CVS pharmacy in the town of English. His attention was drawn to a woman with disheveled hair and sores on her neck, shoulders, and arms. She was with a man in a blue Cadillac with a Lawrence County license plate. Deputy Scott's suspicions were aroused because the woman's appearance was consistent with that of a methamphetamine user and because the car was from out of town. Deputy Scott memorized the license plate number and relayed it to dispatch. The dispatcher informed him that it was registered to a gray Oldsmobile with an address on Popcorn Road in Springville, which is in Lawrence County.

Later that day, when he was on duty, Deputy Scott checked the electronic log that tracks purchases of ephedrine and pseudoephedrine. There were three purchases at the English CVS around the time that Deputy Scott had been there; one of the purchases was made by a Kimberly Jones and another was made by Hall, who had an address on Popcorn Road in Springville. Deputy Scott ran a license check on Hall and learned that he had outstanding warrants and that his license had been suspended as a habitual traffic offender.

Deputy Justin Ash was working the same shift, and Deputy Scott told him to be on the lookout for Hall and the blue Cadillac. Deputy Ash informed Deputy Scott that a detective from Monroe County had also asked him to keep an eye out for Hall and had informed him that Hall was believed to be in the Marengo area and driving a blue Cadillac.

Around 9:00 or 9:30 p.m., Deputy Ash located the blue Cadillac at a gas station in

Marengo. Deputy Scott arrived at the scene, confirmed that the blue Cadillac had the same license plate he had seen earlier at CVS, and identified Hall and Jones. Deputy Scott decided that they would wait for Hall to leave, follow him, and make a traffic stop. When Hall made a turn without signaling, Deputy Scott turned on his lights and siren to initiate a stop. Hall initially slowed down, but then took off at a high rate of speed. Deputies Scott and Ash chased Hall, who reached speeds of over 100 miles an hour, crossed the center line several times, and at one point drove another car off the road. After several miles, the deputies lost sight of Hall.

After following a bad lead that Hall had turned on McClure Road, Deputy Scott eventually found the blue Cadillac in a field off of Alton-Fredonia Road. Hall and Jones were nowhere in sight, so Deputy Scott had Deputy Ash prepare the vehicle for impound while he began searching for the suspects with his dog. Deputy Ash started to conduct an inventory search of the car, but quickly noticed a bottle of bubbling liquid, which he believed to be a one-pot methamphetamine lab. Deputy Ash stopped his search and contacted the Indiana State Police clandestine lab team. The team removed several items from the car that are used to manufacture methamphetamine. Although most of the items were destroyed for safety purposes, some items were sent to a lab for testing, which confirmed the presence of methamphetamine.

As a result, Hall was charged with class B felony dealing in methamphetamine, class D felony possession of methamphetamine, class C felony possession of precursors, class A misdemeanor possession of paraphernalia, class C felony operating a vehicle after a lifetime

4

suspension, and class D felony resisting law enforcement. Prior to trial, Hall filed a motion to suppress the evidence obtained during the warrantless search of the vehicle. The State argued that a warrant was not required because the vehicle had been abandoned and because the officers had conducted a proper inventory search. The trial court denied the motion to suppress. During the jury trial, Hall entered a continuing objection to the evidence recovered from the vehicle, and the evidence was admitted over his objection. At the conclusion of the trial, the jury found Hall guilty on all counts except possession of paraphernalia.

A sentencing hearing was held on November 1, 2011. Hall informed the court that he was participating in a substance abuse program and asked the court to consider that his incarceration would be a hardship on his children. The trial court noted Hall's lengthy criminal record, which consists mostly of driving- and drug-related offenses. The court found that there was a high probability that Hall would offend again, that he was in need of rehabilitation best provided by a penal facility, and that the aggravating circumstances outweighed the mitigating circumstances. The trial court imposed sentences of seventeen years for dealing in methamphetamine, thirty months for possession of precursors, seven years for operating while suspended, and thirty months for resisting law enforcement.[1] The court ordered the seventeen- and seven-year sentences to be served consecutively, with the remaining sentences served concurrently, for an aggregate sentence of twenty-four years. Hall now appeals.

---

[1] The trial court did not enter judgment of conviction on the charge of possession of methamphetamine because it was a lesser-included offense of dealing in methamphetamine.

**Discussion and Decision**

Hall argues that the trial court abused its discretion by admitting the evidence obtained from the search of his vehicle and that his sentence is inappropriate.

## *I. Admission of Evidence*

Hall contends that the admission of the evidence obtained from the vehicle violated his rights under the Fourth Amendment to the United States Constitution.[2] The Fourth Amendment protects citizens from unreasonable searches and seizures. *Buckley v. State*, 886 N.E.2d 10, 14 (Ind. Ct. App. 2008). Searches conducted without a warrant are per se unreasonable, subject to a few established exceptions. *Bell v. State*, 818 N.E.2d 481, 484 (Ind. Ct. App. 2004), *trans. denied* (2005). To trigger Fourth Amendment protections, the subject of the search must exhibit "an actual subjective expectation of privacy that society as a whole is prepared to recognize as objectively 'reasonable.'" *State v. Seidl*, 939 N.E.2d 679, 683 (Ind. Ct. App. 2010).

In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, we do not reweigh the evidence, but defer to the trial court's factual determinations unless clearly erroneous. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We consider the conflicting evidence most favorable to the trial court's ruling, but also

---

[2] Hall also makes a passing reference to Article 1, Section 13 of the Indiana Constitution, which deals with the rights of the accused in a criminal prosecution, including the right to a jury trial, the right to counsel, the right to confrontation, and the right to compulsory process. Hall presumably meant to cite Article 1, Section 11, which mirrors the Fourth Amendment. Even if he had provided the proper citation, he fails to develop an argument concerning his state constitutional rights; therefore, any such argument is waived. *See Taylor v. State*, 717 N.E.2d 90, 93 n. 4 (Ind. 1999) (arguments under Indiana Constitution waived where defendant failed to provide independent argument of state constitutional claims).

consider any uncontroverted evidence in the defendant's favor. *Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007). We consider afresh any legal question of the constitutionality of a search or seizure. *Meredith*, 906 N.E.2d at 869.

The State argues that the Fourth Amendment was not implicated because Hall abandoned the vehicle. Abandoned property is not subject to protection under the Fourth Amendment. *Campbell v. State*, 841 N.E.2d 624, 627 (Ind. Ct. App. 2006).

> The question of abandonment is primarily a question of intent. Intent may be inferred from words, acts, and other objective facts. Abandonment rests upon whether the defendant so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it *at the time of the search*.

*State v. Machlah*, 505 N.E.2d 873, 879 (Ind. Ct. App. 1987) (citations omitted), *trans. denied*.

> In the context of abandoned vehicles and the Fourth Amendment, "the question is not whether someone 'had a proprietary or possessory interest in the automobile at the time of the police activity in question,' taking into account the 'subtle distinctions of common law property concepts,' but rather whether [the] 'defendant was entitled to and did have a reasonable expectation that the automobile would be free from government intrusion.'"

*Wilson v. State*, 966 N.E.2d 1259, 1264 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

In *Wilson*, an officer observed the defendant exit a bar and drive away in a car that had been parked in a handicapped space. The car did not have a handicapped plate or permit, so the officer checked the license plate number and learned that the registered owner had a suspended license and two outstanding warrants. The officer therefore followed the car, which pulled into a parking space near a strip club. The officer pulled up behind the car and

activated his lights, and the defendant fled on foot. The officer decided to impound the vehicle and therefore conducted an inventory search. Inside the car, the officer found several prescription pill bottles belonging to someone other than the defendant. At his trial for dealing in and possession of narcotic drugs, the defendant objected to the evidence found in the car, arguing that impoundment of his vehicle had been unjustified. The evidence was admitted over his objection, and the defendant appealed. We concluded that the defendant had abandoned the vehicle and therefore affirmed. *See id.* (quoting *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005), for the proposition that if "the driver of a car flees at the approach of the police, this is pretty good evidence that he's abandoned the car – that he doesn't want to be associated with it and therefore isn't going to reclaim it.").

The evidence of abandonment is even stronger in Hall's case than in *Wilson*. Hall did not leave the car in a parking lot; he drove it off the road and into a field, where he left it with a flat tire. He also left an active one-pot methamphetamine lab untended in his vehicle. State Police Officer Paul Andry, who was part of the team that removed the hazardous materials from Hall's vehicle, testified that the one-pot method involves mixing the necessary chemicals in a closed bottle. The mixture produces gases which build up pressure inside the bottle. The bottle needs to be periodically "burped" to release the pressure. Tr. at 278. If the lab is not tended to, one of two things typically happens: either the pressure builds to the point where it causes an explosion and releases a lethal cloud of ammonia gas, or the mixture melts a hole in the bottle, and the exposure to oxygen causes the chemicals to ignite as they spew from the bottle, creating an effect like a flame thrower. Officer Andry testified that

8

these effects were capable of burning out an entire vehicle. Thus, the evidence raises an inference that Hall not only was attempting to disassociate himself with the vehicle, but also that he did not reasonably expect the vehicle to remain intact. There is ample evidence that Hall abandoned the vehicle; therefore, his Fourth Amendment rights were not violated, and the trial court did not abuse its discretion by admitting the evidence obtained from the vehicle.

## II. *Appropriateness of Sentence*

Hall asserts that his sentence is inappropriate based on the nature of the offenses and his character. Article 7, Section 6 of the Indiana Constitution authorizes this Court to independently review and revise a sentence imposed by the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Indiana Appellate Rule 7(B) states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

> Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter. In the vast majority of cases, whether these are derived from multiple or single counts, involve maximum or minimum sentences, and are concurrent or consecutive is of far less significance than the aggregate term of years.

*Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v.*

9

*State*, 829 N.E.2d 572, 587 (Ind. Ct. App. 2005) (internal citations and quotations omitted), *trans. denied*, *cert. denied* (2006). The defendant bears the burden of persuading us that the sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

As to the nature of the offenses, Hall led police on a high-speed chase while operating a volatile methamphetamine lab in his vehicle. While Hall points out that no one was injured, that is more attributable to luck and the officers' skill in responding to the situation than anything that Hall did. Hall also argues that his offenses were all part of one series of events, but he does not explain the nexus between his decision to drive with a suspended license and his decision to manufacture methamphetamine. His decision to do both at the same time served only to create a more dangerous situation.

As to Hall's character, he has a lengthy criminal record consisting of nine misdemeanors and six felonies, almost all of which involve driving and/or drugs. In the past, Hall has received alternatives to incarceration, such as probation and community service. He has had probation revoked in two different cases. Hall has acknowledged that he needs treatment for substance abuse, but in light of his history, the trial court was fully justified in determining that Hall's rehabilitation needs to take place within the highly structured environment of prison. Hall has not persuaded us that his sentence of twenty-four years is inappropriate. Therefore, we affirm.

Affirmed.

RILEY, J., and BAILEY, J., concur.

10