## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 08 2015, 8:12 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny James Horton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 8, 2015 <br><br> Court of Appeals Case No. 86A03-1412-CR-423 <br><br> Appeal from the Warren Circuit Court <br><br> The Honorable John A. Rader, Judge <br><br> Trial Court Cause No. 86C01-1207-FB-58 |

**Crone, Judge.**

# Case Summary

A jury found Danny James Horton guilty of class B felony conspiracy to manufacture methamphetamine (meth) and class D felony possession of two or more precursors. On appeal, Horton asserts that the trial court erred in admitting certain evidence and refusing his tendered jury instructions. He also asserts that his convictions violate double jeopardy principles and are not supported by sufficient evidence. We conclude that his convictions violate double jeopardy principles but otherwise find no prejudicial error. Therefore, we affirm his conspiracy conviction and vacate his possession conviction on double jeopardy grounds.

# Facts and Procedural History

The relevant facts most favorable to the jury's verdict are that in June 2012, Horton, Donald Horne, and Melissa Brenner agreed to manufacture meth. On June 27, Horton drove Horne and Brenner to a liquor store and returned to Brenner's apartment, where they drank and made plans for the evening. Horne used a blender to grind pseudoephedrine pills, which are used to manufacture meth. Later, Horton drove the others to a friend's house, where they used meth. Horton went next door and obtained more pseudoephedrine pills, which Brenner removed from their packaging and put in a plastic bag.

After dark, Horton drove Horne and Brenner toward a farm co-op to steal anhydrous ammonia, which is also used to manufacture meth. Horne was in the front passenger seat, and Brenner was in the rear passenger seat. Inside the

car was Horton's duffel bag, which contained several meth precursors: organic solvents (camp fuel), lithium metal (lithium batteries), and hydrochloric (muriatic) acid. The bag also contained meth manufacturing equipment: tubing, funnels, side-cutting pliers, and a glue gun. En route, Horton stopped his car on a gravel road to hide the duffel bag in case they were stopped by police. Horne got out of the car, and Brenner handed him the duffel bag. The trio saw the headlights of two law enforcement vehicles approaching. Horne hid in a ditch with the duffel bag. Brenner tossed the plastic bag of pseudoephedrine pills out the car window.

[4] As Warren County Sheriff's Deputies Anthony Pruitt and Cory Brooks drove toward Horton's car, it appeared to be stopped with its headlights on and engine running. The deputies pulled up beside the car. Deputy Pruitt determined that Horton was the driver and informed Deputy Brooks. Deputy Brooks, who knew Horton, asked Horton if he could search the car. Horton consented. The deputy had Horton and Brenner get out of the car. He found approximately 100 coffee filters, often used in manufacturing meth, on the front passenger seat; an empty thermos, which could be used to store anhydrous ammonia and emitted "a chemical odor" when it was opened, on the front floorboard; and a bottle of drain cleaner, often used in manufacturing meth, in the trunk. Tr. at 190. He also found the bag of pseudoephedrine pills that Brenner had tossed out the window. Deputy Brooks seized all of these items and told Horton that he "believed [he] knew what [Horton] was doing" and "to

conduct that type of business somewhere else." *Id*. at 195. Horton and Brenner got back in the car and drove away.

[5] The deputies "thought it was odd that the front passenger seat [of Horton's car] was empty" and "decided to walk around a little bit and see if [they] could discover[] anything else." *Id*. They soon found Horne and the duffel bag "in the ditch next to the road." *Id*. Deputy Pruitt took Horne into custody. Deputy Brooks drove off in search of Horton and Brenner and found them in Horton's friend's driveway, where he took them into custody.

[6] The State charged Horton with class B felony conspiracy to manufacture meth and class D felony possession of two or more precursors (lithium metal, pseudoephedrine, organic solvents, and hydrochloric acid). Horton failed to appear for his scheduled trial date in June 2013 and was not located until February 2014. After a trial in August 2014, the jury found Horton guilty as charged. The trial court entered judgment of conviction on both counts and sentenced Horton to concurrent terms of nineteen years for conspiracy and three years for possession. Horton now appeals.

## Discussion and Decision

### Section 1 – Horton has waived any argument regarding the admissibility of the evidence seized by the deputies.

[7] Horton filed a pretrial motion to suppress, in which he alleged that the deputies detained him and searched his car in violation of the Fourth Amendment of the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. He

requested the exclusion of all evidence seized or statements made as a result of the detention and search. The trial court denied the motion. At trial, Deputy Brooks testified about his encounter with Horton, the items found in his car, and the duffel bag found in the ditch. Horton objected to the admission of the items seized from the car "based on [the] Motion made previous to trial." *Id*. at 194. The trial court overruled the objection. Horton also objected to the admission of the duffel bag and its contents, and the trial court overruled that objection. *Id*. at 202.

[8] On appeal, Horton contends that the trial court erred in admitting the foregoing evidence. We agree with the State that Horton has waived this argument by failing to object to Deputy Brooks's testimony regarding that evidence.[1] *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005). Further, that testimony was cumulative of Horne's and Brenner's testimony, to which Horton also did not object. "Any error in the admission of evidence is harmless

---

[1] Horton claims that the trial court "treated [his] objection as continuing." Appellant's Br. at 17 (citing Tr. at 194, 202). When Horton objected to the items found in his car, he asked the trial court, "Judge, if we could show a standing objection to further *exhibits*, or do you want me to object one (1) at a time?" Tr. at 194 (emphasis added). The court responded, "[P]robably since they, I don't know whether they all would be covered under the earlier [suppression ruling] then[.]" *Id*. When the State offered the duffel bag and its contents into evidence, the trial court asked, "Continuing objection?" and Horton replied, "Continuing objection. Thank you, Judge." *Id*. at 202. To the extent that the trial court treated Horton's objection as continuing, it pertained only to exhibits and not to testimony, which Horton did not object to.

if the same or similar evidence was admitted without objection." *Gregory v. State*, 604 N.E.2d 1240, 1242 (Ind. Ct. App. 1992), *trans. denied* (1993).[2]

[9] To avoid waiver, Horton contends that the trial court's admission of the testimony was fundamental error. We disagree. As our supreme court explained in *Brown v. State*, 929 N.E.2d 204 (Ind. 2010),

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.
>
> This doctrine has been applied, for example, to review a conviction without proof of an element of the crime despite the lack of objection. But an error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown

---

[2] We agree with the State that Horton has no apparent basis for challenging the admissibility of the duffel bag and its contents, which were found in the ditch after he left the scene of the allegedly unconstitutional search of his car. At the very least, Horton has never made a cogent argument on this point. *Cf. Hall v. State*, 975 N.E.2d 401, 405-06 (Ind. Ct. App. 2012) (holding that defendant abandoned vehicle with meth lab during police chase and therefore had no reasonable expectation of privacy in vehicle for Fourth Amendment purposes). Combined with Horne's and Brenner's testimony, the duffel bag and its contents are sufficient to support both of Horton's convictions.

committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Id.* at 207 (citations and quotation marks omitted). We reach the same conclusion for the same reasons in this case.[3]

## Section 2 – The trial court did not abuse its discretion in admitting evidence regarding Horton's failure to appear for his scheduled trial date.

[10] Next, Horton asserts that the trial court erred in admitting evidence that he had failed to appear for his scheduled June 2013 trial date. "Our standard of review of a trial court's admission of evidence is an abuse of discretion. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misapplies the law." *Mack v. State*, 23 N.E.3d 742, 750 (Ind. Ct. App. 2014) (citation omitted), *trans. denied* (2015).

---

[3] Horton does not specifically contend that Deputies Brooks and Pruitt committed willful malfeasance, but he does claim that Deputy Brooks coerced him into giving consent to search his car by implying that the "search was a parole search or a mandatory requirement of Horton's parole[.]" Appellant's Br. at 24. The parole issue was mentioned at the suppression hearing but not at trial. In its suppression order, the trial court found that "Deputy Brooks inquired as to whether Horton was on parole but made no claim that such status authorized him to search the vehicle." Appellant's App. at 38.

[11] At trial, Deputy Brooks testified over Horton's objection that Horton had failed to appear for trial in June 2013 and was not located until February 2014. Horton contends that this testimony was inadmissible under Indiana Evidence Rule 404(b), which provides in pertinent part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

[12] Here, the State offered the testimony regarding Horton's failure to appear "to show consciousness of guilt." Tr. at 205. This is not a prohibited purpose under Evidence Rule 404(b). In *Bennett v. State*, 883 N.E.2d 888 (Ind. Ct. App. 2008), *trans. denied*, we held that evidence of a defendant's flight to Mississippi and failure to appear at trial was admissible to show consciousness of guilt, and we see no reason to hold differently here. *See id*. at 893 ("[T]he evidence is prejudicial only in the sense that it is highly probative of Bennett's perpetration of the charged offenses. The evidence was offered, as stated, as evidence of consciousness of guilt. This evidence is not unfairly prejudicial in that it is not evidence of other wrongs, but of the charged offenses."). We find no abuse of discretion.

## Section 3 – The trial court did not abuse its discretion in admitting an officer's opinion that the seized evidence constituted a meth lab.

[13] Indiana State Police Sergeant Brock Russell testified over Horton's objection that the evidence found in Horton's car and duffel bag was a "mobile meth lab or the beginning process of a meth lab with the chemicals and tools that are there." Tr. at 285. Horton asserts that this testimony was inadmissible under Evidence Rule 704(b), which states, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." We note that Horton's coconspirator Horne testified without objection that the contents of the duffel bag "were a methamphetamine kit" that was lacking only pseudoephedrine pills and anhydrous ammonia. Tr. at 222. As such, any error in the admission of Sergeant Russell's testimony can only be considered harmless. *Gregory*, 604 N.E.2d at 1242.

[14] In any event, we find no error here. Horton contends that Sergeant Russell's testimony was an improper opinion regarding his intent to manufacture methamphetamine. At most, Sergeant Russell's testimony merely led to an inference about Horton's intent, and "'Rule 704(b) does not prohibit presentation of evidence that leads to an inference, even if no witness could state [an] opinion with respect to that inference.'" *Steinberg v. State*, 941 N.E.2d 515, 526 (Ind. Ct. App. 2011) (quoting 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 704.201 at 589 (3d ed. 2007)) (alteration in *Steinberg*),

*trans. denied*.  Horton also claims that Sergeant Russell's testimony was an impermissible opinion on the ultimate issue of his guilt, but Evidence Rule 704(a) states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue."  The trial court did not abuse its discretion in admitting Sergeant Russell's testimony.

## Section 4 – The trial court did not abuse its discretion in refusing Horton's witness credibility instruction.

The trial court refused three final jury instructions tendered by Horton, who claims that the court erred in doing so.  "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict."  *Surber v. State*, 884 N.E.2d 856, 866-67 (Ind. Ct. App. 2008), *trans. denied*.  "Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion."  *Id*. at 867.  "When reviewing the refusal to give a proposed instruction, this court considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction."  *Brakie v. State*, 999 N.E.2d 989, 993 (Ind. Ct. App. 2013), *trans. denied* (2014).  "An error is to be disregarded as harmless unless it affects the substantial rights of a party.  Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise."  *Id*. (citations and quotation marks omitted).

[16] Horton's first instruction reads as follows:

> The State called one of its witnesses an alleged accomplice with whom the State has entered into a plea agreement providing for a lesser sentence than he/she would otherwise be exposed to for the offense to which he/she plead guilty. Such plea bargaining, as it is called, has been approved as lawful and proper.
>
> An alleged accomplice, including one who has entered in a plea agreement with the State, does not become incompetent as a witness. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. However, the Jury should keep in mind that such testimony is always to be reviewed with caution and weighed with great care.
>
> The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence of the guilt of any other person.

Appellant's App. at 80.

[17] At trial, Horton relied on *Newman v. State*, 263 Ind. 569, 334 N.E.2d 684 (1975), in advocating for the instruction, but on appeal he acknowledges that this language appeared instead in *Willis v. State*, 510 N.E.2d 1354 (Ind. 1987), *cert. denied* (1988). In that case, Willis tendered an identical instruction that was given by the trial court over the State's objection, and the State tendered two accomplice-specific instructions that were given by the trial court over Willis's objection. *See id.* at 1358 (State's instructions: "An accomplice witness is one who testifies that he was involved in the commission of the crime with the defendant. An accomplice is competent as a witness for the State or the defendant in the trial of a criminal cause. The testimony of an accomplice is to

be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness."; "A conviction may be based entirely upon the testimony of an accomplice, and a co-conspirator is an accomplice and is a competent witness."). On appeal, Willis apparently argued that the State's instructions, combined with his instruction, placed "undue emphasis on the accomplice testimony." *Id.*

[18] Our supreme court stated,

> It is generally improper for a trial court to emphasize a particular phase of a case by emphasizing certain propositions of law in its instructions. However, in order to constitute reversible error, the instructions must be so repetitive as to violate the rights of the defendant in that the instructions become an argument of the court on one particular phase of the case.

*Id.* (citation omitted). The court concluded,

> We believe the three instructions in question here, taken in conjunction with all the other instruction[s] given, were not so repetitious as to place undue emphasis on the accomplice testimony. This is particularly true when the instructions have been submitted by both parties. All three instructions were correct statements of the law. It appears the court instructed on both of the parties' theories on this issue and we accordingly see no error.

*Id.*

[19] In this case, however, the State did not submit accomplice credibility instructions, and consequently Horton's tendered instruction placed undue

emphasis on Horne's and Brenner's testimony, potentially to his own detriment ("[T]he testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty."). *See Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003) ("To expressly direct a jury that it may find guilt based on the uncorroborated testimony of a single person is to invite it to violate its obligation to consider all the evidence."). And the trial court instructed the jurors that they were "the exclusive judges of the evidence" and would determine "the value to give to a witness's testimony"; that they could consider "any interest, bias or prejudice the witness may have"; and that "a person charged with a crime is presumed to be innocent." Appellant's App. at 86, 85. Thus, the trial court's instruction covered the substance of Horton's proposed instruction, and we find no abuse of discretion in the court's rejection of it. *See Lyons v. State*, 431 N.E.2d 78, 81 (Ind. 1982) ("Instructions on the credibility of witnesses should be general in nature and should apply equally to all witnesses.").

## Section 5 – The trial court did not abuse its discretion in refusing Horton's conspiracy instruction.

[20] Horton also asserts that the trial court erred in refusing this instruction:

> Mere presence at the scene of the crime or mere association with conspirators will not by themselves support a conspiracy. Presence or a single act will support a conspiracy only if the circumstances permit an inference that the presence or act was intended to advance the ends of the conspiracy.

Appellant's App. at 81. Horton contends that the instruction is supported by the evidence and correctly states the law, citing *Porter v. State*, 715 N.E.2d 868,

870 (Ind. 1999), in which the "mere presence" language was used in addressing the defendant's sufficiency claim, not in a jury instruction. "[T]he mere fact that certain language or expressions are used in the opinions of Indiana's appellate courts does not make it proper language for instructions to a jury." *Gravens v. State*, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), *trans. denied* (2006).

[21] The State points out that "[t]here was nothing in the jury instructions which would lead the jury to believe that Horton's mere presence at the scene of the crime was a sufficient factor to convict him of the charges." Appellee's Br. at 19. Indeed, the trial court instructed the jurors that to convict Horton of conspiracy to manufacture meth, the State had to prove beyond a reasonable doubt that he agreed with Horne or Brenner to manufacture meth with the intent to commit the crime and that one of them performed an overt act in furtherance of the agreement by traveling to Warren County in possession of meth precursors. Appellant's App. at 89. The evidence at trial overwhelmingly established that all three coconspirators agreed to manufacture meth with the intent to commit the crime and traveled to Warren County in possession of several meth precursors. Consequently, we find no abuse of discretion in the trial court's refusal of Horton's instruction.

## Section 6 – The trial court did not abuse its discretion in refusing Horton's constructive possession instruction.

[22] Finally, Horton contends that the trial court erred in refusing this instruction:

> Constructive possession of an item is the intent and capability to maintain dominion and control over the item. Proof of a

possessory interest in the vehicle where the item is found might be adequate to show the capability to maintain control over the item. However, when possession of the vehicle is not exclusive, the inference of intent must be supported by additional circumstances that point to the Accused's knowledge of the nature of the item and its presence. Mere presence where an item is located or association with person [sic] who possess [sic] the item is not alone sufficient to support a finding of constructive possession.

*Id.* at 82. Horton contends that this instruction is supported by the evidence, noting that none of the precursors were found on anyone's person. He also contends that the instruction correctly states the law, again citing cases addressing sufficiency claims and not jury instructions.

[23] He further asserts that his instruction is more complete than the trial court's instruction, which reads in relevant part as follows:

The word "possess" means to own or to exert control over. The word possession can take on several different, but related, meanings.

There are two kinds of possession actual possession and constructive possession. A person who knowingly has direct physical control of a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Possession may be sole or joint. If one person alone has actual or constructive possession of a thing, then possession is sole. If two or more persons share actual or constructive possession of a

thing, then possession is joint.

> Possession may be actual or constructive, and either alone or jointly with others.

*Id.* at 89-90. Horton contends that the trial court's instruction "did not specify possession of a vehicle may be sufficient to establish capability to maintain control," "did not address constructive possession in a vehicle with multiple people in it," "did not state that where possession is not exclusive, the inference of intent must be supported by additional circumstances that point to the accused's knowledge of the nature of the item and its presence," and "did not specify that … mere presence or association with the possessor of contraband is not sufficient to support a finding of constructive possession." Appellant's Br. at 44.

[24] We find no merit in Horton's quibbles about the vehicle; if anything, his proposed instruction was potentially damaging to him because he was the owner and driver of the vehicle, and all the relevant precursors were found outside the vehicle in his duffel bag.[4] Likewise, the instruction's mention of "additional circumstances that point to the accused's knowledge of the nature of the item and its presence" was potentially damaging to him because he was the owner and driver of the vehicle, and both Horne and Brenner testified that the duffel bag belonged to Horton. And finally, nothing in the trial court's

---

[4] Sergeant Russell testified that the drain cleaner found in the vehicle's trunk contained sulfuric acid, which is not one of the precursors that Horton was charged with possessing.

instruction suggests that mere presence or association with the possessor of contraband is sufficient to support a finding of constructive possession. Therefore, we find no abuse of discretion in the trial court's refusal of Horton's instruction.

## Section 7 – Horton's convictions are supported by sufficient evidence.

[25] Horton challenges the sufficiency of the evidence supporting his convictions. Our standard of review is well settled:  we neither judge credibility of witnesses nor reweigh evidence.  *Stetler v. State*, 972 N.E.2d 404, 406 (Ind. Ct. App. 2012), *trans. denied*.

> We consider only the probative evidence and reasonable inferences supporting the verdict and consider conflicting evidence most favorable to the verdict.  We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  That is, the verdict will not be disturbed if there is sufficient evidence of probative value to support the conclusion of the trier of fact.

*Id*. (citations omitted).

[26] As indicated above, the State presented overwhelming evidence that Horton conspired with Horne and Brenner to manufacture meth and possessed two or more precursors.  Horton's argument is merely an invitation to judge witness credibility and reweigh evidence in his favor, which we may not do.

# Section 8 – Horton's convictions violate double jeopardy principles.

Finally, Horton claims, and the State concedes, that his convictions violate double jeopardy principles. Indiana courts have "'long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson* [*v. State*, 717 N.E.2d 32 (1999)].'" *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002) (Boehm, J., concurring in result)). One such rule prohibits "'[c]onviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished.'" *Id.* (quoting *Richardson*, 717 N.E.2d at 56-57 (Sullivan, J., concurring)). Here, the overt act that constitutes an element of the conspiracy charge is the possession of precursors, for which Horton has been convicted and punished. *See* Appellant's App. at 20 (charging information). Because both convictions cannot stand, "we vacate the conviction with the less severe penal consequences," i.e., the class D felony possession conviction, and leave standing the class B felony conspiracy conviction, which we affirm. *Richardson*, 717 N.E.2d at 55.

Affirmed in part and vacated in part.

Barnes, J., and Brown, J., concur.