# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, IN

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jan 18 2013, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA



|  |  |  |
|---|---|---|
| JERMAINE HINES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1206-CR-442 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON SUPERIOR COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48D01-1106-FB-1048

**January 18, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Jermaine Hines ("Hines") appeals his conviction for unlawful possession of a firearm by a serious violent felon as a class B felony.[1] We affirm.

## ISSUE

Whether the trial court erroneously admitted the firearm into evidence.

## FACTS

On March 21, 2011, an unknown suspect fired several gunshots at another person at a gas station known as Rick's Mart in Anderson, Indiana. Detective Norman Rayford ("Det. Rayford") of the Anderson Police Department was assigned to investigate the shooting. Initial tips pointed Det. Rayford's investigation to Hines as a possible suspect. Several days after the shooting, Hines voluntarily came to the police station and spoke with Det. Rayford; Hines denied any involvement in the shooting. After providing Det. Rayford with his address and telephone numbers, Hines was released.

A few days later, Hines saw Det. Rayford near Rick's Mart and inquired about the status of the investigation. Det. Rayford stated that he would contact Hines if he needed additional information. Over the next couple of months, Det. Rayford interviewed several witnesses, including Abdul Hood ("Hood"). Hood identified Hines from a photo lineup as being present at the scene of the shooting. Additional witnesses either identified Hines as being present or being the actual shooter. Based upon this

---

[1] Ind. Code § 35-47-4-5(c).

information, Det. Rayford informed patrol officers during their roll call meetings that he wanted Hines to be brought in for additional questioning. Det. Rayford specifically informed Officers Chris Frazier ("Officer Frazier") and Steve Denny ("Officer Denny") that Hines was considered a person of interest in his investigation. Officers Frazier and Denny indicated they were familiar with Hines and would search for him.

On May 24, 2011, at approximately 1:00 p.m., Officer Chad Boynton ("Officer Boynton") was parked in an unmarked police vehicle watching a residence on Sherman Street. Officer Boynton had received information that the house was a base for drug trafficking, and that Hines would frequently visit this location. Officers Frazier and Denny, who were in uniform, were parked in another location in a marked police car. At some point, Officer Boynton observed someone whom he believed to be Hines exit the house and ride away on a moped. He radioed his observations to Officers Frazier and Denny; they immediately began to search the area for the person on the moped.

Shortly thereafter, Officers Frazier and Denny observed the person described by Officer Boynton at Rick's Mart. As they pulled into the parking lot, they recognized that person as Hines. As Hines exited Rick's Mart, he observed the officers, paused, and started to step back inside. Officers Frazier and Denny called out, "Hey, Jermaine, come here [we] want to talk to you." (Tr. 131, 148). Hines immediately hopped onto the moped and sped off. The officers pursued Hines in their police car, out of the parking lot, behind Rick's Mart, and across an empty lot. Hines then crashed his moped, stood up, and continued fleeing from the officers on foot. After driving around another house

seeking to cut off Hines' escape, Officers Frazier and Denny exited their police car and ran after Hines. At some point, Officer Frazier observed Hines reach towards his waistband, making a throwing motion, and heard something strike the side of the house at 2309 Hendricks Street. Officer Frazier subsequently caught and arrested Hines; he also radioed to Officer Boynton that Hines threw something down during the chase. At 2309 Hendricks Street, Officer Boynton recovered a .45 caliber handgun.

On June 8, 2011, the State charged Hines with Count I, resisting law enforcement as a class D felony, and Count II, unlawful possession of a firearm by a serious violent felon as a class B felony. On February 28, 2012, Hines filed a Motion to Suppress Evidence. In that motion, Hines asserted that his arrest and the subsequent seizure of the firearm were in violation of his rights protected by both the Federal and Indiana Constitutions.

The trial court heard evidence regarding Hines' suppression motion on March 26 and April 10, 2012. After hearing evidence, the court took the matter under advisement. On April 16, 2012, Hines filed an amended Motion to Suppress with a supporting legal memorandum. On April 17, 2012, the State filed its response, and the trial court denied Hines' motion. Hines filed a motion seeking certification the trial court's denial of his motion for interlocutory appeal, but the trial court also denied that request.

A jury trial was conducted on April 18-19, 2012. Prior to the submission of evidence, the State dismissed Count I, the resisting law enforcement charge. After hearing evidence, the jury found Hines guilty of being a serious violent offender in

4

possession of a firearm. On May 14, 2012, Hines was sentenced to eighteen (18) years executed at the Department of Correction. Hines now appeals

DISCUSSION

Hines asserts that the trial court erred in admitting the firearm because it was unlawfully seized by law enforcement officers. Specifically, Hines argues that law enforcement officers did not have legal cause to detain him, and, as a result, he was free to decline to speak with the officers. Additionally, Hines concedes that the firearm was abandoned, but he argues that it was abandoned only after law enforcement officers attempted to illegally seize him. As a result, the trial court should have denied the State's request to admit the firearm into evidence.

We first note that trial courts have broad discretion when ruling on the admissibility of evidence. *Brooks v. State*, 934 N.E.2d 1234, 1240 (Ind. Ct. App. 2010) *trans. denied.* A trial court's ruling on the admissibility of evidence is therefore reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's determination is clearly against the logic and effect of the facts and circumstances before the court. *Id*. "In reviewing a ruling on the admissibility of evidence, as is the situation here, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling, although we must also consider any uncontested evidence favorable to the defendant." *Id*. If law enforcement officers violate either the Federal or Indiana Constitutions when seizing evidence, the appropriate remedy is to

5

prevent the State from using illegally seized evidence at trial. *Trotter v. State*, 933 N.E.2d 572, 581 (Ind. Ct. App. 2010).

> The Fourth Amendment of the United States Constitution provides,
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The fundamental purpose of the Fourth Amendment "is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Trotter*, 933 N.E.2d at 579. "In general, the Fourth Amendment requires a warrant, based upon probable cause, in order for the police to search or seize an individual; however, there are some well-delineated exceptions to the warrant requirement." *Brooks*, 934 N.E.2d at 1240.

> One well known exception is the *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968).

> Under a *Terry* stop, a police officer, without probable cause, is permitted to stop and briefly detain an individual for investigative purposes, but only if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. A *Terry* stop permits the officer to temporarily freeze the situation for inquiry but does not afford an officer the authority attendant to an arrest. A trial court's determination that the officer had reasonable suspicion for the stop is reviewed de novo, but due weight is given to inferences drawn from the facts by the trial court. Moreover, when making our determination regarding reasonable suspicion, we consider the totality of the circumstances of the case in order to determine whether the officer had a particularized and objective basis for suspecting wrongdoing by the person being stopped. Reasonable suspicion is an abstract concept that is not readily reduced to a neat set of rules; however, the reasonable suspicion requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from

6

such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur.

*Brooks*, 934 N.E.2d at 1241 (citations and quotations omitted).

In this case, we conclude that law enforcement officers had reasonable suspicion of criminal activity to detain Hines. The evidence revealed that Det. Rayford had developed information from witnesses indicating that Hines was either present or the actual shooter at Rick's Mart on March 21, 2011. The witness accounts contradicted information given to Det. Rayford by Hines. This information was personally communicated to Officers Frazier and Denny by Det. Rayford. Then, on May 24, 2011, Officer Boynton observed Hines leaving a house where drug activity was suspected to have occurred. Further, when officers announced that they wanted to speak with Hines, he fled. See *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (unprovoked flight from law enforcement is often suggestive of a person's involvement in criminal activity). While the information regarding Hines' departure from a suspected drug house *alone* would likely be insufficient to support a Terry stop, all of the evidence presented to the trial court justified the law enforcement officer's attempt to briefly detain Hines to conduct an investigation.[2]

Concerning the subsequent seizure of the firearm, the State argues that it was abandoned by Hines and is not subject to protections provided by the Fourth Amendment.

---

[2] In his brief, Hines asserts that the conduct of law enforcement officers also violated Article I, § 11 of the Indiana Constitution. However, he has failed to develop an independent argument concerning his state constitutional rights; therefore, any such argument is waived. *See Taylor v. State*, 717 N.E.2d 90, 93 n.4 (Ind. 1999) (arguments under the Indiana Constitution are waived where the defendant has failed to provide independent argument of state constitutional claims).

The State is correct. The protections of the Fourth Amendment extend to areas where an individual exhibits "an actual subjective expectation of privacy that society as a whole is prepared to recognize as objectively 'reasonable.'" *Hall v. State*, 975 N.E.2d 401, 405 (Ind. Ct. App. 2012) (*quoting State v. Seide*, 939 N.E.2d 679, 683 (Ind. Ct. App. 2010)). As a result, unless it is unlawfully seized, abandoned property does not implicate the Fourth Amendment. *Id*.; *See also Wilson v. State*, 966 N.E.2d 1259 (Ind. Ct. App. 2012). The question of abandonment is primarily a question of intent. "Intent may be inferred from words, acts, and other objective facts. Abandonment rests upon whether the defendant so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it *at the time of the search*." *Id*. at 405 (emphasis in original) (*quoting State v. Machlah*, 505 N.E.2d 873, 879 (Ind. Ct. App. 1987) *trans. denied.*).

In this case, law enforcement officers lawfully attempted to detain Hines based upon their reasonable suspicion that he had been engaged in criminal activity. While fleeing from law enforcement officers, Hines threw the firearm away. Hines was in such a rush to get away from law enforcement officers that he crashed his moped, got up, and continued to flee on foot. Additionally, Hines was in such a rush to get rid of the firearm that it struck the side of the house at 2309 Hendricks Street when he threw it away. The objective facts in this case show Hines' clear intention to relinquish any possessory interest in the firearm. *See Campbell v. State*, 841 N.E.2d 624 (Ind. Ct. App. 2006) (defendant who threw firearm under a car after police shined flashlight on him was found

8

to have abandoned firearm).  Therefore, we affirm the trial court's admission of the firearm into evidence.

Affirmed.

ROBB, C.J., and MAY, J., concur.