

FILED

Feb 28 2018, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Khalil Jalon Payne,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 28, 2018

Court of Appeals Case No.
79A02-1707-CR-1606

Appeal from the Tippecanoe
Circuit Court

The Honorable Thomas H. Busch,
Judge

Trial Court Cause No.
79C01-1609-F4-39

**Pyle, Judge.**

# Statement of the Case

Kahlil Jalon Payne ("Payne") appeals his conviction for Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF")[1] and the trial court's merger of his convictions. He argues that there was insufficient evidence to prove that he committed unlawful possession of a firearm by an SVF and that the trial court's merger of two of his convictions violated the constitutional prohibition against double jeopardy. We agree that there was insufficient evidence to support Payne's unlawful possession of a firearm by an SVF conviction and reverse it, but we do not find merit in his double jeopardy argument. We also note that the trial court merged Payne's conviction for Class A misdemeanor carrying a handgun without a license with his unlawful possession of a firearm by an SVF conviction. Because Payne's carrying a handgun without a license conviction remains valid after our reversal of his unlawful possession conviction, we instruct the trial court to enter judgment of conviction on that count on remand and to re-sentence Payne accordingly.

We affirm in part, reverse in part, and remand with instructions.

# Issues

1. Whether there was sufficient evidence to support Payne's conviction for Level 4 felony unlawful possession of a firearm by an SVF.

---

[1] IND. CODE § 35-47-4-5(c).

2.  Whether the trial court's merger of Payne's convictions
    violated the constitutional prohibition against double jeopardy.

# Facts

On September 27, 2016, Katelynn Risner ("Risner") and Stephanie Miller ("Miller") picked up Payne to go to Miller's house and "[get] high." (Tr. Vol. 2 at 10). Payne planned to stay the night at Miller's apartment, and Risner saw him bring a duffel bag full of clothes with him. At Miller's apartment, which was one unit inside of a four-unit building, Miller, Miller's boyfriend, Risner, and Payne smoked spice. Miller "passed out," and Risner and Payne took her van to go to another friend's house. (Tr. Vol. 2 at 19). When Miller woke, she thought that her van had been stolen and called the police.

Police officers from the Lafayette Police Department responded to the scene. Miller told them that she did not want to report the vehicle as stolen any longer because she knew that Risner and Payne were wanted on active arrest warrants, but she said that she still wanted her van back. While the officers were questioning Miller, Risner and Payne returned to her apartment. When they opened the door and saw the police officers inside, they "became scared," "retrieved [sic] back [to] the hallway" outside of the apartment, and tried to exit the building. (Tr. Vol. 2 at 25). Officer Nathan Stoneking ("Officer Stoneking") followed them and detained Risner in the common hallway. Officer Alex Dare ("Officer Dare") also followed Risner and Payne and saw Payne in the common hallway by a stairwell that led to the second floor of the

building. (Tr. Vol. 2 at 38). He detained Payne, searched him, and found a bag of spice in Payne's right front pocket.

[5] After arresting Risner and Payne, the officers discovered two black duffle bags near the stairwell in the common hallway. One officer searched the bags and located a firearm in one of them. The bag also contained male clothing that was "consistent both in style and size" with the clothing that Payne was wearing. (Tr. Vol. 2 at 55).

[6] On September 29, 2016, the State charged Payne with Count 1, Level 4 felony unlawful possession of a firearm by an SVF; Count 2, Class A misdemeanor carrying a handgun without a license; Count 3, Class A misdemeanor possession of a synthetic drug or synthetic drug lookalike substance; Count 4, Level 5 felony carrying a handgun without a license; and Count 5, Level 6 felony possession of a synthetic drug or synthetic drug lookalike substance.

[7] The trial court held a bench trial on May 24, 2017. At the conclusion of the first phase of the trial, the court found that Payne had possessed the firearm the police had found in the duffel bag in the hallway.[2] The court reasoned that the "only reasonable inference" from the evidence was that Payne had "had the bags in his possession," "noticed that the police were there," and "tried to find a place to escape or to hide them" before he had been detained. (Tr. Vol. 2 at

---

[2] While the court discussed its conclusions on the evidence, it did not enter a judgment of conviction on the underlying unlawful possession of a firearm by an SVF until after the second phase of trial.

72). The court clarified that it did not "put a lot of weight" on the evidence that the clothing found in the duffle bags along with the firearm was the same "style" as Payne's clothes because it was essentially the "kind of clothing that many people wear." (Tr. Vol. 2 at 70). However, the court noted that "the fact that it was the defendant's size [was] prohibitive [sic]." (Tr. Vol. 2 at 71).

[8] During the second phase of Payne's bench trial, the State offered certified records from a 2010 robbery conviction and claimed that the records proved that Payne was the defendant in that cause who had previously been convicted of robbery. The records included the charging information, probable cause affidavit, supplemental probable cause affidavit, plea agreement, the trial court's order on plea hearing, and the trial court's sentencing order, which were all labeled with the same cause number. The charging information included the robbery defendant's name and birth date, which matched Payne's name and birth date as listed in the instant cause, as well as the robbery defendant's driver's license number, which did not match the information in the instant cause. The plea agreement included the robbery defendant's name, birth date, and signature. The trial court's order on plea agreement and sentencing order contained only the robbery defendant's name. The State rested its case without further testimony.

[9] Based on this evidence, the trial court concluded that the State had proved that Payne had a prior robbery conviction. The trial court found Payne guilty of Count 1, unlawful possession of a firearm by an SVF; Count 2, Class A misdemeanor carrying a handgun without a license; Count 3, Class A

misdemeanor possession of a synthetic drug or synthetic drug lookalike substance; and Count 5, Level 6 felony possession of a synthetic drug or a synthetic drug lookalike substance. The court concluded that Count 3 merged into Count 5, that Payne was not guilty of Count 4, and that Count 2 merged into Count 1. The trial court then sentenced Payne to nine (9) years on Count 1 and one (1) year on Count 5, and ordered him to serve the sentences consecutively, for an aggregate sentence of ten (10) years. The court further ordered Payne to serve seven and one half (7½) years of his aggregate sentence in the Department of Correction, one and one half (1½) years in Community Corrections, and one (1) year suspended. Payne now appeals.

# Decision

[10] On appeal, Payne argues that: (1) there was insufficient evidence to support his conviction for unlawfully possessing a firearm as an SVF; and (2) the trial court's merger of his convictions in Count 3 into Count 5 violated the constitutional prohibition against double jeopardy. We will address each of these arguments in turn.

### 1. Sufficiency of the Evidence

[11] Our standard of review for sufficiency of the evidence claims is well-settled. We consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime

proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the judgment. *Id.* at 147.

[12] In order to convict Payne of unlawful possession of a firearm as an SVF, the State had to prove that he "knowingly or intentionally possess[ed] a firearm" after having been convicted of a qualifying felony, specifically robbery. I.C. § 35-47-4-5(c). Payne challenges the sufficiency of the evidence supporting both the possession and SVF elements of his offense.

[13] With respect to the possession element, Payne asserts that there was insufficient evidence that he possessed the firearm because there was no evidence that the bag where the firearm was found belonged to him. In support of this argument, he notes that the bag was found in a common hallway of a four-unit apartment building and that he did not live in the building.

[14] To prove that a defendant possessed an item, the State may prove either actual or constructive possession. *Eckrich v. State*, 73 N.E.3d 744 (Ind. Ct. App. 2017), *trans. denied*. Actual possession occurs "when a person has direct physical control over [an] item." *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015). When a person does not have direct physical control over an item, as was the case here, the person may still have constructive possession of the item if he "'has (1) the capability to maintain dominion and control over [it]; and (2) the intent to maintain dominion and control over it.'" *Id.* (quoting *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011)). In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that

he knew of the presence of the contraband and was capable of controlling it. *Harrison v. State*, 32 N.E.3d 240, 248 (Ind. Ct. App. 2015), *trans. denied*. "[W]hen possession of the premises is non-exclusive, this inference is permitted only if some additional circumstances indicate the defendant's knowledge of the presence of the contraband and the ability to control it." *Id*. Some of these recognized additional circumstances include: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) the contraband being in plain view; and (6) the location of the contraband being in close proximity to items owned by the defendant. *Id*.

[15] Payne did not have exclusive possession of the premises where the firearm was found, but there were additional circumstances permitting the inference that Payne constructively possessed the firearm. Specifically, Payne attempted to flee the area where police were located and dropped the bag in furtherance of his attempted get away. In addition, the bag containing the firearm was found in close proximity to the location where Payne was detained, and the firearm was found within a bag amongst clothes that belonged to him. Payne asserts that there was insufficient evidence that the bag and the clothes in the bag belonged to him, but that is a request to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146. The State produced evidence that Risner saw Payne carrying a duffle bag on his way to spend the night at Miller's house,

and the clothes in the bag matched Payne's clothes in terms of style and size.[3] Accordingly, we conclude that there was sufficient evidence that Payne constructively possessed the bag containing the firearm and the firearm itself.

[16] Next, Payne contends that there was insufficient evidence to prove that he had been convicted of the pre-requisite violent felony necessary to be considered an SVF. In order to convict Payne of unlawful possession of a firearm by an SVF, the State had to prove that he had previously been convicted of a serious violent felony. *Berberena v. State*, 86 N.E.3d 199, 201 (Ind. Ct. App. 2017), *trans. denied.* INDIANA CODE § 35-47-4-5 lists several offenses that qualify as serious violent felonies, and that list includes robbery. I.C. § 35-47-4-5(b)(13).

[17] At trial, the State introduced a certified record of a prior robbery conviction for "Kahil Jalon Payne," which was the same name listed in this case, and the robbery defendant's birth date matched the birth date listed in Payne's records for the instant cause. (State's Ex. 1). Payne argues that this certified record was insufficient to prove that he was the same person who had committed the robbery because the matching name and birth date were not sufficient to prove his identity.

---

[3] Payne suggests that the trial court found that the style and size of the clothing were not dispositive. However, we interpret the trial court's finding differently. The trial court stated that it did not "put a lot of weight" on the evidence that the clothing was the same style as Payne's, but it also noted that "the fact that it was the defendant's size [was] prohibitive [sic]." (Tr. Vol. 2 at 70, 71). Within the context of the paragraph, it is clear that the trial court meant that the defendant's size was "probative" and that the word "prohibitive" is a typographical error. (Tr. Vol. 2 at 71).

[18] Our supreme court has previously explained that "'[c]ertified copies of judgments or commitments containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies.'" *Tyson v. State*, 766 N.E.2d 715, 718 (Ind. 2002) (quoting *Hernandez v. State*, 716 N.E.2d 948, 953 (Ind. 1999)). However, "'there must be supporting evidence to identify the defendant as the person named in the documents.'" *Id.* (quoting *Hernandez*, 716 N.E.2d at 953). This proof of identity "'may be in the form of circumstantial evidence.'" *Walker v. State*, 988 N.E.2d 1181, 1187 (Ind. Ct. App. 2013) (quoting *Baxter v. State*, 522 N.E.2d 362, 365 (Ind. 1988), *reh'g denied*), *trans. denied.* "'If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was [the] defendant who was convicted of the prior felony, then a sufficient connection has been shown.'" *Tyson*, 766 N.E.2d at 718 (quoting *Hernandez*, 716 N.E.2d at 953).

[19] As Payne argues, we have previously held that a matching name and birth date, absent other identifying evidence, are not sufficient to prove identity. *Livingston v. State*, 537 N.E.2d 75, 78 (Ind. Ct. App. 1989) (holding that evidence of a matching name and birth date *or* social security number were not sufficient to prove the defendant's identity).[4] In response, the State contends that it

---

[4] It is important to note that the State in *Livingston* did not introduce documents with matching name, date of birth, **and** social security number. The State introduced documents with a name and date of birth **or** social security number. It is an open question as to whether matching documents containing all three of the aforementioned identifiers would be sufficient to identify a particular defendant beyond a reasonable doubt. There are instances where the State has used documents with a name, date of birth, and social security

produced additional evidence of Payne's identity because the plea agreement in the robbery cause and the signed advisement of rights form in the instant cause both contained Payne's signature.

[20] We do not find this evidence dispositive. Although the plea agreement in the robbery cause and the signed advisement of rights form in this cause both contained signatures, the signature within the plea agreement had not been authenticated as belonging to Payne. Indiana Rule of Evidence 902(1) provides that "domestic public documents that are sealed and signed are self-authenticating." However, self-authentication of a document merely relieves

number to identify a defendant. *See Reed v. State*, 491 N.E.2d 182 (Ind. 1986) (name, date of birth, and social security were sufficient on certain documents, but noted that other evidence such as photographs, fingerprints, and identifying testimony were much more likely to survive a challenge to the sufficiency of the evidence). However, in most cases, the State also introduced other identifying evidence which significantly increased the evidence from which a juror could be firmly convinced that the defendant was the actual person convicted of the qualifying felony. While social security numbers were not originally meant to be a unique national identifying number, President Franklin Roosevelt issued an executive order authorizing federal government agencies who found it necessary "to establish a new system of permanent account numbers pertaining to individual persons, [to] utilize exclusively the Social Security account numbers . . . ." Exec. Order No. 9397, 3 C.F.R. (1943-1948 Comp.) 283-284 (1943). Even so, from 1946 until 1972, social security cards contained the warning "FOR SOCIAL SECURITY PURPOSES – NOT FOR IDENTIFICATION." The Social Security Administration, https://www.ssa.gov/history/hfaq.html (last visited February 9, 2018). This warning was removed as a part of a redesign of the card. *Id.* Whether or not the removal of the warning was a result of a policy change, social security numbers have come to be thought of as a quasi-universal personal identification number. R. Brian Black, *Legislating U.S. Data Privacy in the Context of National Identification Numbers: Models From South Africa and the United Kingdom*, 34 Cornell L.J. 398 (2001); *see also*, Flavio L. Komuves, *We've Got Your Number: An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers*, 16 Marshall J. Computer & Info. L. 529, 531-532 (1998). However, in light of the increasing threat of identity theft, the issuance of duplicate social security numbers, and administrative errors, there is an increasing body of research that, contrary to general public perception, social security numbers are not reliable individual identifiers. *See* ID Analytics, *Exploring the Impact of SSN Randomization* Whitepaper March 2014, *available at* http://www.idanalytics.com/media/Exploring-the-Impact-of-SSN-Randomization.pdf (last visited February 9, 2018) (research finding that more than 40 million social security numbers are associated with multiple people). As a result, the best practice for prosecutors is not to rely solely on name, date of birth, and social security numbers; prosecutors should seek to include other methods of identification such as booking photographs, fingerprints, affidavits, physical identifiers, or testimony of witnesses. This will have the effect of reducing the risk of misidentification and increase the confidence jurors may place in the evidence introduced at trial.

the proponent of providing foundational testimony for admission of the *document* as evidence. *Reemer v. State*, 835 N.E.2d 1005, 1007 n.4 (Ind. 2005). In other words, because the certified records for the robbery case were self-authenticating, the State did not have to provide foundational testimony to prove that they were official court records. This self-authentication did not relieve the State of its burden of authenticating that the signature in the robbery records belonged to Payne. *See* Evid. R. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

[21] Handwriting can be identified and authenticated through a non-expert's opinion if the opinion is "based on familiarity with [the handwriting] that was not acquired for the current litigation." Evid. R. 901(b)(2); *Smith v. State*, 284 N.E.2d 522, 525 (Ind. Ct. App. 1972) ("Where the genuineness of a signature appearing on a document is in issue, a lay witness is deemed qualified to render an opinion as to the authenticity thereof if he is acquainted or familiar with the signature of the person whose signature he is called upon to identify."). Handwriting may also be authenticated through the trier of fact or an expert's comparison of the handwriting with an authenticated specimen. Evid. R. 901(b)(3). However, evidence must be authenticated in some manner. *See* Evid. R. 901(a).

[22] Here, the State did not introduce expert or non-expert testimony to authenticate the signature; nor did Payne admit that the signature was his. Accordingly, the

signature was never authenticated, and the only evidence the State introduced to prove Payne's identity as the defendant in the robbery cause was the evidence of the robbery defendant's name and birth date. As this Court has already held that a defendant's name and birth date, alone, are not sufficient to prove identity, we conclude that there was not sufficient evidence to prove that Payne had previously committed the robbery and, therefore, qualified as an SVF. *See Livingston*, 537 N.E.2d at 78. Accordingly, there was also insufficient evidence to support his conviction for unlawfully possessing a firearm as an SVF. *See* I.C. § 35-47-4-5(c). We reverse Payne's conviction and remand with instructions for the trial court to vacate it.

[23] However, we note that the trial court merged Payne's Count 2 Class A misdemeanor carrying a handgun without a license conviction with his unlawful possession of a firearm by an SVF conviction prior to entering judgment of conviction. Because Payne's status as an SVF was not an element of carrying a handgun without a license, that conviction remains valid. *See* I.C. § 35-47-2-1(a) (providing that "a person shall not carry a handgun in a vehicle or on or about the person's body without being licensed under this chapter to carry a handgun"); *Carter v. State*, 750 N.E.2d 778, 781 n.9 (Ind. 2001) ("If a conviction for a greater offense is reversed for reasons specific to the incremental elements between the greater and a lesser included offense, a conviction for the lesser offense may remain valid."). We remand with instructions for the trial court to enter judgment of conviction on the Class A

misdemeanor carrying a handgun without a license conviction and to sentence accordingly.

## 2. Double Jeopardy

[24] Next, Payne argues that the trial court violated the constitutional prohibition against double jeopardy when it recorded on his abstract of judgment that Count 3 merged into Count 5.[5] He notes that our supreme court has held that a double jeopardy violation "'cannot be remedied by the 'practical effect' of concurrent sentences or by merger after conviction has been entered.'" (Payne's Br. 17) (quoting *Hines v. State*, 30 N.E.3d 1216, 1221 (Ind. 2015)).

[25] However, *Hines* refers to instances where a trial court attempts to merge counts after entering judgments of conviction on the charges. The trial court here specified on Payne's abstract of judgment that Count 3 had merged, but there is no indication in the abstract of judgment or chronological case summary that the trial court entered judgment of conviction on Count 3 prior to merger. Payne also admits that the trial court did not sentence him on Count 3. Our supreme court has held that a "verdict for which the court did not enter judgment for one reason or another (merger, double jeopardy, etc.) is unproblematic." *Carter*, 750 N.E.2d at 781. *See also Kilpatrick v. State*, 746 N.E.2d 52, 60 (Ind. 2001) ("[W]here a trial court merges some offenses into

---

[5] Payne also challenges the trial court's merger of Count 2 into Count 1, but we need not address that argument as we have reversed Count 1.

others for purposes of sentencing, there is no double jeopardy violation."). Because the trial court did not enter judgment or sentence Payne on Count 3, his double jeopardy argument fails.

[26] Affirmed in part, reversed in part, and remanded with instructions.

Bailey, J., concurs.

Kirsch, J., dissents with opinion.

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Khalil Jalon Payne,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>79A02-1707-CR-1606 |

**Kirsch, Judge, dissenting.**

I believe that the evidence presented at trial was sufficient to sustain the conviction of Kahlil Jalon Payne for Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"), and I would affirm the trial court's judgment in all respects.

Accordingly, I respectfully dissent.

The majority opinion notes that in *Tyson v. State*, 766 N.E.2d 715, 718 (Ind. 2002), our Supreme Court stated that "'there must be supporting evidence to identify the defendant as the person named in the documents.'" (quoting *Hernandez v. State*, 716 N.E.2d 948, at 953). Additionally, this proof of identity "'may be in the form of circumstantial evidence.'" *Walker v. State*, 988 N.E.2d 1181, 1187 (Ind. Ct. App. 2013) (quoting *Baxter v. State*, 522 N.E.2d 362, 365 (Ind. 1988), *trans. denied.* Finally, "'If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was [the] defendant who was convicted of the prior felony, then a sufficient connection has been shown.'" *Tyson*, 766 N.E.2d at 718 (quoting *Hernandez*, 716 N.E.2d at 953).

Applying these precepts to the facts of this case, we see the following:

First, as noted by the prosecutor at trial, the defendant's name and its spelling are unique. Second, the date of birth established in Payne's 2010 conviction matches his date of birth in this proceeding. Third, Payne admitted to and did not contest Counts 3 or 5 in which the same name and date of birth appear as on the information in Payne's 2010 conviction. Fourth, and as noted by the trial judge, Payne admitted that he's the same Khalil Jalon Payne who was convicted of the misdemeanor that was a predicate for Count 5.