## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 19 2020, 11:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rodney T. Sarkovics
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Edward Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 19, 2020

Court of Appeals Case No.
19A-CR-1412

Appeal from the
Hamilton Circuit Court

The Honorable
Paul A. Felix, Judge

Trial Court Cause No.
29C01-1806-F4-4190

**Altice, Judge.**

# Case Summary

[1] James Edward Williams was convicted after a bifurcated jury trial of Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 5 felony carrying a handgun without a license, and Class A misdemeanor resisting law enforcement. Williams appeals[1] and asserts that (1) the trial court abused its discretion when it denied his motion to suppress, and thereafter admitted into evidence during trial, a backpack and its contents discovered in the area where he was seen running from police, and (2) the State failed to present sufficient evidence to convict him. Because we find no error in the admission of evidence or with regard to sufficiency, we affirm his convictions.

[2] However, we sua sponte identify a double jeopardy violation not remedied through the merger of convictions at sentencing, and we therefore remand with instructions to vacate the conviction for Level 5 felony carrying a handgun without a license.

[3] We affirm in part, vacate in part, and remand.

# Facts & Procedural History

[4] Around noon on June 14, 2018, Fishers Police Department (FPD) Officer Daniel Nelson was dispatched to an address in the Cumberland Crossing Apartments on a report of a domestic disturbance involving Williams. Officer

---

[1] Williams does not challenge his conviction for resisting law enforcement.

Nelson was familiar with Williams because he and other FPD officers had been to that address two weeks prior to serve Williams with an arrest warrant, but were unsuccessful.

[5] In response to the radio call, Officer Nelson drove his marked police vehicle to the scene. He had been informed that Williams was on foot. While driving toward the apartment complex, Officer Nelson noticed Williams walking on the east side of a north/south tree line, on the west side of which is an industrial strip mall and parking lot. Officer Nelson noticed that Williams was carrying a black backpack. Officer Nelson stopped and yelled to Williams out of his open window, "Stop. Police." *Transcript Vol. II* at 140. Williams looked briefly at Officer Williams and then ran westerly toward the tree line. Officer Nelson exited his vehicle and repeatedly yelled at Williams to stop but did not pursue Williams on foot. He saw Williams run through a creek or culvert and disappear somewhere along the tree line and foliage.

[6] Minutes later, Officer Nelson located a black backpack laying on the grass near the tree line area where Williams was seen running. The backpack was consistent in size, shape, and color with the one he saw Williams carrying, and it did not have grass clippings, leaves, or other debris on it, which indicated to Officer Nelson that it had not been there for long. Officer Nelson called for additional units to assist and search for Williams, and a dozen or so FPD officers responded and established a perimeter. About forty-five minutes after Officer Nelson lost sight of Williams, Officer Charles Yeager located and apprehended Williams near a loading dock by the strip mall on the west side of

the tree line and approximately eighty yards from where the backpack was found. Williams had a small twig in his hair and was holding a water bottle but did not have a backpack. Officer Nelson requested an evidence technician come to the scene and process the backpack. Officer Christopher Marshall conducted a warrantless search of the backpack and found men's shoes and clothes and a .22 caliber semi-automatic Smith & Wesson M& P pistol. Williams was transported back to Officer Nelson's location, and he denied ownership of the backpack.

[7] The next day, the State charged Williams with Count 1, Level 4 felony unlawful possession of a firearm by a serious violent felon (SVF); Count 2, Level 5 felony carrying a handgun without a license; and Count 3, Class A misdemeanor resisting law enforcement. Williams filed a motion to suppress, seeking to suppress the evidence seized in the warrantless search of the backpack.

[8] The trial court held a hearing on William's motion, addressing the issue of whether the backpack was abandoned property. Williams argued that he had not "denied ownership and disassociated himself from the property *before* the search" and had "retained exclusive control of the bag until being forced to relinquish his possession by pursuit of the police." *Appellant's Appendix Vol. II* at 25 (emphasis in original). Williams maintained that such circumstances were not sufficient to establish abandonment. The trial court denied Williams's motion, stating that "[i]f in fact the backpack was the Defendant's, he abandoned it once he ran away from the officer." *Id.* at 33. Pursuant to

Williams's request, the March 11 jury trial was bifurcated such that, during the first phase of trial, the jury was not aware of the possession of a firearm by a SVF charge.

[9] At trial, the parties stipulated that Officer Nelson had a legal reason to stop Williams and knew his identity and physical description. The State's theory was that Williams had actual and exclusive possession of the backpack and that he dropped it while fleeing from police. The State presented the testimony of Officers Nelson, Marshall, and Yeager, after which both parties rested.

[10] The jury found Williams guilty of carrying a handgun without a license and resisting law enforcement. In phase two of the trial, Williams pled guilty to Count 1, possession of a firearm by a SVF, and to the charged enhancement associated with Count 2, carrying a handgun without a license. At sentencing, the trial court merged Count 2 into Count 1 and imposed ten years with six years executed in the Indiana Department of Correction on Count 1 and 365 days in the Hamilton County Jail on Count 3. The two sentences were ordered to be served concurrently. Williams now appeals.

## Discussion & Decision

### a. Double Jeopardy

[11] Initially, we address the double jeopardy concerns that we find exist in the record before us. Double jeopardy violations implicate fundamental rights, and this Court may address such violations sua sponte. *See Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015), *trans. denied*. Article 1, Section 14 of the

Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." "[T]wo or more offenses are the 'same offense' . . . if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

[12] Here, the jury returned a guilty verdict for carrying a handgun without a license. To convict Williams of this offense, the State was required to establish beyond a reasonable doubt that Williams did knowingly or intentionally carry a handgun in or upon his vehicle or person.[2] *See* Ind. Code § 35-47-2-1. At trial, the State's evidence in support of this charge was Williams's possession of the handgun found in the backpack. In the second phase of the trial, Williams pled guilty to unlawful possession of a firearm by a serious violent felon, i.e., he admitted to having a prior qualifying conviction and that he knowingly or intentionally possessed a firearm. *See* I.C. § 35-47-4-5. The State did not present a factual basis that specified an instance of possession separate from that supporting the other count of carrying a handgun.

[13] The facts of this case are similar to those in *Jarrell v. State*, 818 N.E.2d 88 (Ind. Ct. App. 2004), *trans. denied*, where the defendant was arrested when he was

---

[2] We note that the State was not required to prove that Williams did not possess a valid license to carry the handgun because it is not an essential element of the crime, but rather proof of a valid license is a defense. Ind. Code § 35-47-2-24; *Alexander v. State*, 768 N.E.2d 971, 977 (Ind. Ct. App. 2002), *aff'd on reh'g, trans. denied*.

found to be in possession of a loaded firearm during a routine traffic stop. He was subsequently convicted of both possession of a firearm by a serious violent felon and carrying a handgun without a license. *Id*. at 91. This court concluded that, because both offenses stemmed from carrying the same gun, the convictions violated the double jeopardy clause, and we vacated the carrying a handgun without a license conviction. *Id*. at 93; *see also George v. State*, No. 18A-CR-2300 (Ind. Ct. App. Jan. 23, 2020) (opinion not yet certified) (vacating carrying handgun without a license conviction where defendant's possession of same handgun also was used to establish possession of firearm by SVF conviction); *Alexander v. State*, 768 N.E.2d 971, 978 (Ind. Ct. App. 2002) (same), *aff'd on reh'g*, *trans. denied*.

[14]   Here, in its May 23, 2019 sentencing order, the trial court merged Count 2 into Count 1, but at that point the court had already entered judgment of conviction on both counts. *See Appellant's Appendix Vol. II* at 37 (March 14, 2019 Judgment of Conviction entering judgment on Counts 1, 2, and 3). We have recognized that "[a] trial court act of merging, without also vacating, the conviction is not sufficient to cure a double jeopardy violation." *Gregory v. State*, 885 N.E.2d 698, 703 (Ind. Ct. App. 2008), *trans. denied*; *cf. Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) ("[A] merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned."). Accordingly, merger at sentencing did not remedy the double jeopardy violation, and we remand with instructions to

vacate Williams's conviction for Level 5 felony carrying a handgun without a license.

## b. Admission of Evidence

[15] Turning to Williams's claims, he first argues that the backpack was unconstitutionally searched without a warrant and, therefore, its contents including the handgun should have been suppressed and not admitted at trial. Trial courts have broad discretion when ruling on the admissibility of evidence. *Hines v. State*, 981 N.E.2d 150, 153 (Ind. Ct. App. 2013). In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, we do not reweigh the evidence and defer to the trial court's factual determinations unless clearly erroneous. *Hall v. State*, 975 N.E.2d 401, 405 (Ind. Ct. App. 2012). We consider the conflicting evidence most favorable to the trial court's ruling, but also consider any uncontroverted evidence in the defendant's favor. *Id.* "We consider afresh any legal question of the constitutionality of a search or seizure." *Id.* (citing *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009)).

[16] The Fourth Amendment to the Constitution of the United States protects citizens against unreasonable searches and seizures. "The reasonableness of a search requires that the subject of the search has exhibited an actual subjective expectation of privacy that society as a whole is prepared to recognize as objectively 'reasonable.'" *State v. Seidl*, 939 N.E.2d 679, 683 (Ind. Ct. App. 2010) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). The fundamental

purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Hines*, 981 N.E.2d at 153 (quotations omitted).

[17] It is well-recognized that abandoned property is not subject to protection under the Fourth Amendment. *Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015), *trans. denied*; *Hines*, 981 N.E.2d at 154. The issue of abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts. *Hall*, 975 N.E.2d at 405. "Abandonment rests upon whether the defendant so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." *Id.* (quoting *State v. Machlah*, 505 N.E.2d 873, 879 (Ind. Ct. App. 1987) (citations omitted), *trans. denied*). One way a defendant can abandon property is by leaving the property behind while fleeing law enforcement. *See Wilson v. State*, 825 N.E.2d 49, 52 (Ind. Ct. App. 2005) (finding that defendant abandoned bag when he tossed it under a car as he fled from police).

[18] Here, Officer Nelson responded to a disturbance call involving Williams and saw Williams walking away from the apartment complex carrying a backpack. Williams had active arrest warrants, and Officer Nelson ordered Williams to stop, but Williams looked at Officer Nelson and fled. Williams ran to and through a tree line with brush and foliage, and shortly thereafter Officer Nelson found a black backpack in the grass in the area where he had seen Williams running. Williams was apprehended by a loading dock on the other side of the tree line, with a twig in his hair and without the backpack, which he denied

belonged to him. From this evidence, the jury reasonably could have inferred that Williams intended to relinquish any possessory interest in the backpack and its contents – and no longer retained a reasonable expectation of privacy in it – when he discarded it as he ran from police. *See Hines*, 981 N.E.2d at 155 ("objective facts . . . show[ed] Hines' clear intention to relinquish any possessory interest in the firearm" when he threw it while fleeing from police).

[19] To the extent that Williams argues that he could not have *voluntarily* relinquished possession of the backpack because, when Officer Nelson ordered him to stop, "he was subject to law enforcement's authority" and thus was not acting voluntarily, we reject this claim. *Appellant's Brief* at 12-13. While "abandoned property is inadmissible if the abandonment occurs after the owner is improperly detained[,]" *J.B. v. State*, 30 N.E.3d 51, 55 (Ind. Ct. App. 2015), here it is uncontested both that law enforcement had a valid basis to stop Williams and that the abandonment occurred before Williams was apprehended. Furthermore, our courts have recognized that when a defendant disregards an officer's order to stop, items that he or she discards while fleeing from police may be considered abandoned property. *See Gipson v. State*, 459 N.E.2d 366, 367 (Ind. 1984) (defendant found to have abandoned sack containing a revolver when he threw the sack under a parked car after police officer, who believed defendant was engaging in a drug transaction, had stepped out of police vehicle and ordered defendant to "hold it"); *Hines*, 981 N.E.2d at 154-55 (defendant, who was a person of interest in an investigation, found to have abandoned firearm when he threw it as he was fleeing from police after

they had called out to him "Hey, Jermaine, come here [we] want to talk to you"); *Wilson*, 825 N.E.2d at 52 (defendant found to have abandoned bag containing cocaine when he dropped it under a parked car when officers, suspecting a drug transaction was occurring, exited their vehicle and asked him to stop).

[20] We find that, in this case, the trial court properly determined that Williams abandoned the backpack such that the search of it did not violate the Fourth Amendment and that the court did not abuse its discretion when it admitted the contents of the backpack at trial.[3]

## c. Sufficiency of the Evidence

[21] In challenging the sufficiency of the evidence, Williams contends that the State failed to present sufficient evidence "that the backpack belonged to [him] and/or that he knew the contents of [it]."[4] *Appellant's Brief* at 17.

> When reviewing a claim of insufficient evidence, the appellate court will neither reweigh the evidence nor judge the credibility

---

[3] Williams also challenges the search under the Indiana Constitution. However, as the State observes, Williams made no separate argument under Article 1, Section 11 in his motion to suppress or when he objected to the admission of the handgun at trial. Therefore, his argument on appeal based on Article 1, Section 11 is waived for failure to raise it in the trial court. *Redfield v. State*, 78 N.E.3d 1104, 1108 (Ind. Ct. App. 2017), *trans. denied*. Waiver notwithstanding, we find no state constitutional violation. Just as abandoned property is not subject to Fourth Amendment protection, "the same is true under Article 1, Section 11 of the Indiana Constitution." *Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015), *trans. denied*.

[4] Although Williams frames his argument as insufficient evidence to convict him of carrying a handgun without a license and contends that his convictions on Count 1 and 2 should be reversed, we have already dealt with Count 2 above, ordering that it be vacated. Thus, we address his sufficiency claim in terms of whether the evidence was sufficient to convict him of unlawful possession of a firearm by a SVF.

of the witnesses. We consider only the probative evidence and reasonable inferences supporting the verdict. And we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

*Ericksen v. State*, 68 N.E.3d 597, 600 (Ind. Ct. App. 2017) (citations and quotations omitted), *trans. denied*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). A conviction may be based purely on circumstantial evidence. *Willis v. State*, 27 N.E.3d 1065, 1067 (Ind. 2015).

[22] To convict Williams of unlawful possession of a firearm by an SVF, the State was required to demonstrate that he knowingly or intentionally possessed a firearm after having been convicted of a qualifying felony. *See* I.C. § 35-47-4-5(c). Here, after Williams was found guilty of carrying a handgun without a license, he pled guilty to the enhancement for that offense as well as to unlawful possession of a firearm by a serious violent felon, pursuant to an agreement that he would be permitted to challenge on appeal the jury's finding that he was in possession of a handgun.

[23] To prove that a defendant possessed an item, the State may prove either actual or constructive possession. *Payne v. State*, 96 N.E.3d 606, 610 (Ind. Ct. App. 2018), *trans. denied*. Actual possession occurs "when a person has direct physical control over [an] item." *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015). Constructive possession occurs when the person has the intent and capability to maintain dominion and control over the firearm. *Causey v. State*,

808 N.E.2d 139, 143 (Ind. Ct. App. 2004). To prove the element of intent, the State must demonstrate the defendant's knowledge of the presence of the firearm. *Id.* Knowledge may be inferred from either exclusive dominion and control over the premises containing the firearm, or from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm. *Id.*

[24] Here, the State presented evidence that Williams was carrying a black backpack when Officer Nelson first saw him walking and when he fled after the officer ordered him to stop. Williams ran to a tree line area and into the wooded area. No other people were with Williams or in the area. Minutes later, Officer Nelson found a black backpack, of the "basic size, shape, and color" that Williams had been seen wearing/carrying, laying in the grass by the same tree line area where Williams was seen, and the backpack appeared to have not been there in the grass for "any length of time." *Transcript Vol. II* at 142, 143. Williams did not have a backpack when he was apprehended about forty-five minutes later. From the evidence presented, the jury could have reasonably inferred that Williams possessed the backpack and discarded it so that he would not be caught with the firearm in it. *Payne*, 96 N.E.3d at 611 (circumstances permitted inference that defendant had possessed the duffel bag and firearm in it and dropped it as he was trying to avoid police, where earlier a witness had seen him carrying duffel bag into apartment and police found a duffel bag in close proximity to location where defendant was detained in the common hallway as he was attempting to flee the apartment building).

Williams highlights that there was no DNA or fingerprint evidence linking him to the firearm and that nothing in the backpack positively identified him as the owner of it and its contents. However, the evidence does not have to rule out every hypothesis of innocence. *Drane*, 867 N.E.2d at 147. The State presented sufficient evidence to convict Williams of possession of a firearm by a SVF.

Judgment affirmed in part, vacated in part, and remanded.

Robb, J. and Bradford, C.J., concur.