## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2019, 10:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Stichter, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 19, 2019 <br><br> Court of Appeals Case No. 18A-CR-2641 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Sean M. Persin, Judge <br><br> Trial Court Cause No. 79C01-1807-F4-29 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Christopher Stichter was convicted of Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"), Level 6 felony criminal recklessness, Class A misdemeanor possession of a controlled substance, Class B misdemeanor false informing, and Class B misdemeanor leaving the scene of an accident. Stichter was also found to be a habitual offender, and his sentence for the SVF count was enhanced accordingly. He now appeals his convictions and the habitual-offender finding on a variety of grounds. Specifically, Stichter contends that (1) the trial court erred by not granting his motion to sever two groups of charges, (2) the trial court erred by replaying a bodycam video for the jury after deliberations had begun, and (3) the evidence is insufficient to show he is an SVF and a habitual offender. We affirm.

# Facts and Procedural History

[2] On July 13, 2018, the Lafayette Police Department received a report of a suspicious vehicle at Sonic Drive-In. When Officer Jonathan Stanfield arrived, he was directed to a Ford Escape parked in a drive-in stall. Stichter was in the driver's seat, a male—later identified as Ashton VanPelt—was in the front-passenger seat, and a female was in the back-passenger seat. Officer Stanfield approached the car and began questioning its occupants. Stichter told Officer Stanfield that his name was Tyler Campbell and that his date of birth was January 9, 1994, both of which later proved to be false. VanPelt also gave Officer Stanfield a false name and date of birth. Officer Stanfield then ran a

warrant check and learned that the name VanPelt had given him was false.  At that point, Officer Stanfield asked VanPelt to step out of the car and began placing him in handcuffs.  As Officer Stanfield was handcuffing VanPelt, Stichter put the car in gear, and it began rolling forward.  Officer Stanfield yelled for Stichter to put the car in park but, instead, Stichter put the car in reverse, backed up, and drove away.  While backing up, the car's passenger door, which was still open from when VanPelt had gotten out, hit the Sonic menu.  Also, Officer Aaron Dorbin, who had arrived at Sonic to assist Officer Stanfield, was nearly hit by the car as Stichter reversed out of the drive-in stall.  After jumping out of the way, Officer Dorbin ran to his patrol car and followed the Ford Escape.  Stichter drove through the Sonic parking lot, turned westbound on an eastbound street to get into a Lowe's parking lot, and then drove through a ditch.  Office Dorbin followed Stichter but eventually lost sight of the car.

[3]     Over the next few days, officers continued to search for Stichter, and his physical description and a description of the car were emailed to the entire police department.  On July 14, officers found the Ford Escape abandoned at an apartment complex.  The license plate had been removed and placed inside the car.  When officers searched the car, they found several rounds of .22 caliber ammunition in the driver's side door.

[4]     Then, on July 16, officers received a request to conduct a well-being check on a man passed out in a parked Chevy Aveo.  Officer Joshua Saxton responded, looked in the driver's side window, and immediately recognized Stichter as the

person who officers had been looking for since July 13. Officer Saxton then radioed for back-up. Officer William Dorsey arrived, looked in the passenger's side window, and saw a handgun in a cup holder next to Stichter's right knee. Concerned that Stichter would try to flee or that he would use the gun, officers came up with a plan to quickly remove Stichter from the car and get the gun before he woke up. As officers pulled Stichter, who was still unconscious, out of the car, a gray bag fell out of the car along with him. Inside the gray bag, officers found a pill bottle containing sixteen Suboxone pills, a digital scale, and rolling papers. The officers removed the gun from the cup holder and identified it as an unloaded .22 caliber revolver. By then, Stichter was conscious and claimed the gun was not his but, later, forensic testing found his DNA on the front sight of the gun. Officer Dorsey continued searching the car and found a plastic baggie containing 1.72 grams of methamphetamine on the floor below the driver's seat.

[5] The State charged Stichter with ten counts. Counts 1-6 related to the events of July 16: Count 1: Level 4 felony unlawful possession of a firearm by a serious violent felon (based on a 2009 conviction for Class B felony burglary, 79D02-0808-FB-32); Count 2: Level 5 felony carrying a handgun without a license with a prior felony; Count 3: Class A misdemeanor carrying a handgun without a license; Count 4: Level 5 felony possession of methamphetamine and a firearm; Count 5: Level 6 felony possession of methamphetamine; and Count 6: Level 6 felony possession of a controlled substance (Suboxone) and a firearm. Counts 7-10 related to the events of July 13: Count 7: Level 6 felony criminal

recklessness; Count 8: Level 6 felony resisting law enforcement; Count 9: Class B misdemeanor false informing; and Count 10: Class B misdemeanor leaving the scene of an accident. The State also alleged that Stichter is a habitual offender based on a 2017 conviction for Level 6 felony theft (79D05-1611-F6-1039) and a 2009 conviction for Class C felony possession of a controlled substance (79D02-0810-FC-99).

[6] Before trial, Stichter filed a motion to sever the July 13 charges from the July 16 charges. The trial court held a hearing on the motion and, after argument from both parties, denied the motion, explaining:

> Let's try it all together because it's all part of you know again not the same modus operandi, not similar plan or scheme I disagree with the state on that but I mean I tend to agree with [the State] this series of acts connected together [in a] short period of time, they're out looking for him not because these cases are related just i[n] terms of a common scheme or plan but I do think that it's probably part of the same series of acts connected together in a short period of time.

Tr. Vol. II p. 34.

[7] The parties agreed that the trial would be bifurcated so that the allegations involving prior felonies could be tried separately from the underlying charges. The first phase on the underlying charges began on September 11. Officer Stanfield testified, and during his testimony the State presented his bodycam video from July 13, which shows Stichter sitting in the driver's seat of the Ford Escape. *See* Ex. 1R. The video also shows Stichter telling Officer Stanfield that

his name is Tyler Campbell and his date of birth is January 9, 1994, and shows Stichter backing out of the Sonic drive-in stall and driving away from officers. *See id*. Officer Dorsey also testified, and during his testimony the State presented his bodycam video from July 16. The video is about three minutes and shows Stichter being arrested, the gray bag (containing sixteen Suboxone pills) being picked up, Officer Dorsey searching the floor below the driver's seat (where the baggie of methamphetamine was found), and Officer Dorsey handling the gun. *See* Ex. 6R. The State then called Benjamin Rachwal, the owner and pharmacist at Custom Plus Pharmacy, who testified that Stichter's date of birth is January 8, 1992. During Rachwal's testimony, the State presented Stichter's pharmacy record that lists his date of birth and address that matches the address listed in the charging information in this case. *See* Ex. 20. Rachwal also stated that although Stichter's pharmacy record shows that he had a prescription for Suboxone films, he did not have a prescription for Suboxone tablets. Rachwal explained that although the active ingredient is the same, Stichter would need a separate prescription to obtain Suboxone tablets instead of films. After the State rested, defense counsel moved for a directed verdict on the possession-of-a-controlled-substance charge, asserting that Stichter had a valid prescription for Suboxone. The trial court denied the motion, explaining that based on testimony that Suboxone tablets and films are not interchangeable, the issue would need to be resolved by the jury.

[8] During deliberations, the jury asked to see Officer Dorsey's bodycam video again. Defense counsel objected to any replaying of the bodycam video unless

the jury expressed a disagreement about the evidence. Over defense counsel's objection, the trial court decided to grant the jury's request, and the bodycam video was replayed in open court in the presence of both parties. Ultimately, the jury found Stichter guilty of Class A misdemeanor carrying a handgun without a license, Level 6 felony possession of a controlled substance (Suboxone) and a firearm, Level 6 felony criminal recklessness, Level 6 felony resisting law enforcement, Class B misdemeanor false informing, and Class B misdemeanor leaving the scene of an accident. The jury hung on the two possession-of-methamphetamine charges.

[9] The trial court then had to address the allegations involving prior felonies. Stichter agreed that the second phase could be combined and done without a jury. The State presented certified records of Stichter's prior felonies. *See* Exs. 24, 26, 27. The State also presented Stichter's certified Bureau of Motor Vehicles (BMV) records. *See* Ex. 29. The trial court incorporated evidence from the first phase of the trial and found Stichter guilty of the SVF count and that Stichter is a habitual offender.[1] The trial court imposed an aggregate twenty-five-year sentence, which included a habitual-offender enhancement on the SVF count.

[10] Stichter now appeals.

---

[1] The trial court also found that Stichter had committed a prior felony for purposes of Count 2: Level 5 felony carrying a handgun without a license with a prior felony, but it ultimately merged that count with the SVF count.

# Discussion and Decision

## I. Severance

[11] Stichter first contends that the trial court erred by declining to sever the July 13 charges from the July 16 charges. Two or more charges may be joined in an information when the offenses:

> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2) are based on the same conduct or on a **series of acts connected together** or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9(a) (emphasis added). The gist of Stichter's argument is that neither Indiana Code section 35-34-1-9(a)(1) nor section 35-34-1-9(a)(2) were satisfied and that the charges were improperly joined at the outset. We agree.

[12] The trial court denied the motion to sever because it found that the offenses were properly joined as "part of the same series of acts connected together in a short period of time." Tr. Vol. II p. 35. But the July 13 charges and the July 16 charges were not "connected together." First, on July 13, Stichter backed into a Sonic menu and fled from police. Then, three days later, on July 16, he was found passed out in a car with a gun and drugs. On July 13 he was in a Ford Escape whereas on July 16 he was in a Chevy Aveo. The July 13 offenses started with the report of a suspicious vehicle whereas the July 16 offenses

began as a well-being check. We find that these distinct sets of offenses were not "part of the same series of acts connected together in a short period of time," *id.*, and conclude that the trial court erred by denying severance.

[13] However, not every trial error requires reversal. *See Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). In reviewing errors in the application of state evidentiary or procedural law, appellate courts apply harmless-error rules. *Dill v. State*, 727 N.E.2d 22, 24 (Ind. Ct. App. 2000), *sum. aff'd in relevant part by* 741 N.E.2d 1230 (Ind. 2001). An error is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor as not to affect the substantial rights of the parties. *Id.* Here, the evidence that Stichter was criminally reckless and left the scene of an accident was overwhelming. That is, Officer Stanfield's bodycam video from July 13 shows Stichter crashing into the Sonic menu as he backs out of the drive-in stall before driving away from officers. So, too, was the evidence that Stichter committed false informing because Officer Stanfield's bodycam video also captured Stichter telling officers that his name is Tyler Campbell and that his date of birth is January 9, 1994. As for the July 16 counts, there was strong evidence of the charges Stichter was convicted of. That is, Officer Dorsey's bodycam video shows the gray bag (containing sixteen Suboxone pills) and the gun, both in very close proximity to Stichter. Stichter's DNA was also found on the front sight of the gun, and the caliber of the gun—a .22 revolver—matched the caliber of the ammunition found in the Ford Escape. Regarding the charge for possession of Suboxone, Stichter never disputed that he possessed Suboxone but instead argued that he

had a prescription. *See* Tr. Vol. II, p. 217. But Rachwal testified that there is a difference between Suboxone films, which Stichter had a prescription for, and tablets, which Stichter did not have a prescription for. All of this evidence suggests that the trial court's error in denying Stichter's motion to sever was sufficiently minor as not to affect his substantial rights. *See Frentz v. State*, 875 N.E.2d 453, 463-64 (Ind. Ct. App. 2007) (concluding that overwhelming evidence of guilt rendered any error in trial court's denial of severance was harmless), *trans. denied*.

[14] Moreover, the jury recognized that the evidence for the July 16 possession-of-methamphetamine charges was not as strong and hung on those charges. This indicates that the jury clearly and separately considered each individual charge. *See id.* (finding harmless error where defendant was acquitted on two charges after trial court refused to grant motion for severance); *see also Spindler v. State*, 555 N.E.2d 1319, 1321 (Ind. Ct. App. 1990) ("Acquittal on one charge is evidence a jury has the ability to treat offenses separately.").

[15] For these reasons, we conclude the trial court's error in denying Stichter's motion to sever was harmless.

## II. Bodycam Video

[16] Next, Stichter argues that the trial court erred by replaying Officer Dorsey's bodycam video for the jury after deliberations had begun. He specifically argues that reviewing the bodycam video "highlights the arrest of Stichter" and

creates the inference that "Stichter had been using drugs resulting in his unconscious disheveled state." Appellant's Br. p. 19.[2]

[17] The procedure for allowing jurors to review evidence and testimony during deliberations is governed by both statute and case law. *Hall v. State*, 897 N.E.2d 979, 982 (Ind. Ct. App. 2008). Here, the jury requested to review Officer Dorsey's bodycam video.[3] In circumstances such as these, the decision to allow the jury to review the bodycam video was within the discretion of the trial court. *Stokes v. State*, 801 N.E.2d 1263, 1269 (Ind. Ct. App. 2004). When considering whether to grant a jury's request to review evidence, the trial court should consider three factors: (1) whether the material will aid the jury in a proper consideration of the case; (2) whether any party will be unduly prejudiced by submission of the material; and (3) whether the material may be subjected to improper use by the jury. *Hall*, 897 N.E.2d at 982-83.

---

[2] Stichter also asserts that the bodycam video "shows [him] in a very unfavorable light as he was unconscious when police officers extracted him from his vehicle." Appellant's Br. p. 19. We have reviewed the bodycam video, and it does not show Stichter being pulled from the car. In the opening shot, Stichter has already been removed from the car and handcuffed and is seen lying face-down on the ground. *See* Ex. 6R at 0:01. Another bodycam video—Officer Saxson's—shows that Stichter was unconscious before officers removed him from the car but that video was not replayed for the jury.

[3] Indiana Code section 34-36-1-6 states, "If, after the jury retires for deliberation: (1) there is a disagreement among the jurors as to any part of the testimony; or (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties." As relevant here, our Supreme Court has clarified that Indiana Code section 34-36-1-6 is triggered only where the jurors "explicitly indicate a disagreement" as to any part of the testimony. *Bouye v. State*, 699 N.E.2d 620, 627 (Ind. 1998). This is not a "disagreement" case, and therefore Indiana Code section 34-36-1-6 does not apply.

As to the first factor, if the jury requests particular pieces of information, presumptively that information will aid the jury in proper consideration of the case. *See id*. at 983. Defense counsel did not present any argument to the trial court rebutting this presumption, and as such, the first factor was satisfied. Next, there is no evidence that the bodycam video was "unduly prejudicial" because it had already been played in open court during the trial.[4] *See Mays v. State*, 907 N.E.2d 128, 133 (Ind. Ct. App. 2009) (finding there was little risk that a jury would place undue weight on videos replayed during deliberations because the videos had already been played in open court), *trans. denied*. While it is true that the bodycam video shows Stichter being arrested, it also shows the gray bag (containing methamphetamine) and Officer Dorsey handling the gun—both of which help prove Stichter's possession of those items. Therefore, any possible prejudice to Stichter was outweighed by the evidentiary value of the bodycam video. The final consideration is whether the bodycam video could be subjected to improper use by the jury. Here, the trial court replayed the bodycam video in open court with both parties present. Because we fail to see how, under these circumstances, improper use by the jury is possible, and Stichter has not given us any reason to think the jury otherwise "misused" the

---

[4] Stichter notes that the trial court played the bodycam video twice and asserts that "playing it twice highlights the arrest of Stichter" and therefore constitutes error. Appellant's Br. p. 19. Although defense counsel objected to the bodycam video being replayed, in general, he did not make a separate objection to it being played a second time. Therefore, this argument is waived. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004) (issues raised for the first time on appeal are waived). Moreover, Stichter cites no authority for the proposition that replaying video evidence twice constitutes reversible error. And in any event, we have said that "repetition, without more, is not reversible error any more than is the repeated review of the other exhibits previously permitted in the jury room." *Hall*, 897 N.E.2d at 983.

video, we find the third factor was also satisfied. *See Sturma v. State*, 683 N.E.2d 606, 611 (Ind. Ct. App. 1997) (holding that it was proper for the jury to view the videotape after deliberations began, in open court where the trial court can monitor the use of the videotape). Accordingly, the trial court did not err by replaying the bodycam video to the jury after deliberations had begun.

## III. SVF and Habitual Offender

[19] Finally, Stichter contends that there is insufficient evidence to show that he is an SVF and a habitual offender. The gist of his argument appears to be that the documents the State used to establish his prior felony convictions do not contain sufficient evidence to identify him as the person convicted in those cases.

[20] In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tyson v. State*, 766 N.E.2d 715, 718 (Ind. 2002). Regarding the use of documents used to establish the existence of prior convictions, our Supreme Court has stated:

> Certified copies of judgments containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies. While there must be supporting evidence to identify the defendant as the person named in the documents, the evidence may be circumstantial. If the evidence yields logical and reasonable inferences from which the finder of fact may

determine beyond a reasonable doubt that it was the defendant who was convicted of the prior felony, then a sufficient connection has been shown.

*Id*.; *see also Walker v. State*, 813 N.E.2d 339, 341 (Ind. Ct. App. 2004) (evidence from a prior conviction that contained the same name, date of birth, and driver's license number is sufficient to establish the defendant's identity), *trans. denied*. Here, to prove that Stichter is an SVF, the State offered into evidence the information, plea agreement, guilty-plea order, sentencing order, and abstract of judgment for a 2009 Class B felony burglary. *See* Ex. 24. To prove that Stichter is a habitual offender, the State offered into evidence the information, plea agreement, guilty-plea order, sentencing order, and abstract of judgment for a 2017 Level 6 felony theft and a 2009 Class C felony possession of a controlled substance. *See* Exs. 26, 27. The charging informations for all of these cases include an address matching the address on the charging documents in this case as well as Stichter's name and date of birth.

[21] Stichter's argument on appeal relies on case law holding that a matching name and date of birth, absent other identifying evidence, are not sufficient to prove identity. *See Payne v. State*, 96 N.E.3d 606, 612 (Ind. Ct. App. 2018), *trans. denied*. In this case, however, the charging informations also contain an address in addition to his name and date of birth. This address is the same as the address listed on Stichter's certified BMV and pharmacy records, which list his date of birth and address. Therefore, because the evidence shows the same address in addition to the same name and date of birth, we find the evidence is

sufficient to identify Stichter as the person convicted in those prior cases and therefore to support the trial court's finding that he is an SVF and a habitual offender.[5]

[22] Affirmed.

Kirsch, J., concurs.

Altice, J., concurs in result with separate opinion.

---

[5] During the first phase of Stichter's trial, Officer Saxton was allowed to testify as to Stichter's driver's license number. On appeal, Stichter contends that the trial court erred by allowing Officer Saxton to testify regarding Stichter's driver's license number. He asserts that had Officer Saxton's testimony about Stichter's driver's license number not been admitted there would be insufficient evidence to find him to be an SVF and a habitual offender. For the reasons just stated, we disagree.

| Christopher Stichter, | Court of Appeals Case No. |
|---|---|
| *Appellant-Defendant,* | 18A-CR-2641 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

Altice, J., concurring in result.

[23] I concur with the decision to affirm the trial court, but I write separately because, while my colleagues agree with Stichter that the charges against him were improperly joined at the outset, I respectfully do not. Rather, I find that it was permissible to join the charges and that the trial court did not abuse its discretion when it denied Stichter's motion for severance.

[24] As to the joinder of the charges, Ind. Code § 35-34-1-9(a)(2) provides, in relevant part, that two or more charges may be joined in an information when the offenses are based on "a series of acts connected together." Here, after Stichter fled from Sonic in the Ford Escape shortly after 7:00 p.m. on Friday,

July 13, damaging property and almost hitting an officer in the process, officers chased but lost him. Over the weekend, officers were notified by email and during roll call that a warrant had been issued for Stichter's arrest and instructed officers to be on the lookout for him. The next day, Saturday, July 14, police located the Escape, abandoned and with the license plate moved to the inside of the vehicle. During an inventory search, police found .22 caliber ammunition in a compartment in the driver's side door.

[25] Police continued the search for Stichter throughout that weekend. On Monday, July 16, at around 11:15 a.m., when Officer Joshua Saxton responded to a dispatch for a well check on a person passed out for hours in the driver's seat of a Chevy Aveo vehicle, he immediately recognized the driver as Stichter. Given Stichter's history of fleeing and resisting, and the outstanding arrest warrant, Officer Saxton called for back-up and five officers arrived on the scene. The officers saw a revolver, later determined to be a .22 caliber, in the cupholder near Stichter, and they formulated a plan to remove him quickly from the car before he could access the weapon, pulling him out while he was still unconscious.

[26] In my view, this sequence of events constitutes "a series of acts connected together" within the meaning and intent of I.C. § 35-34-1-9(a)(2) such that joinder of the ensuing charges from the July 13 and July 16 incidents was permissible. That is, the search for Stichter was ongoing between July 13 and July 16, and Officer Saxton and other officers handled the situation in the manner that they did on July 16 because of Stichter's conduct on July 13. The

two dates and the operative facts underlying the two sets of charges are connected.

[27] The next inquiry then is whether the trial court should have granted Stichter's motion for severance. Severance of offenses is governed by I.C. § 35-34-1-11, which provides in pertinent part:

> (a) Whenever two or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
>
> (1) the number of offenses charged;
>
> (2) the complexity of the evidence to be offered; and
>
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[28] Our Supreme Court has explained that, on appellate review, the degree of deference owed to a trial court's ruling on a motion for severance depends on the basis for joinder:

> Where the offenses have been joined *solely* because they are of the same or similar character [pursuant to Ind. Code § 35-34-1-9(a)(1)], a defendant is entitled to severance as a matter of right. Ind. Code § 35-34-1-11(a) (2008). The trial court thus has no discretion to deny such a motion, and we will review its decision

de novo. *Jackson v. State,* 938 N.E.2d 29, 36 (Ind. Ct. App. 2010). But where the offenses have been joined because the defendant's underlying acts are connected together [pursuant to Ind. Code § 35-34-1-9(a)(2)], we review the trial court's decision for an abuse of discretion. *Craig v. State,* 730 N.E.2d 1262, 1265 (Ind. 2000).

*Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015) (emphasis in original). Accordingly, where, as here, the offenses were joined because the operative facts underlying the charges were connected, the trial court's decision not to sever the two sets of charges is reviewed for an abuse of discretion.

[29] At the hearing on Stichter's motion for severance, and in response to Stichter's argument that the charges were "improperly joined to begin with," the trial court disagreed, stating that the charges were a "series of acts connected together in a short period of time." *Transcript Vol. II* at 34. As stated above, I agree.

[30] The trial court then addressed whether, under I.C. § 35-34-1-11(a) (Subsection 11), severance was warranted to promote a fair determination of Stichter's guilt or innocence. The trial court considered the factors outlined in Subsection 11, including the number of counts, whether it would be confusing to the jury to try them together, and the complexity of the case, noting this was not the type of case where there would be defenses that would apply to some charges but would not apply to others. It also recognized that in general some types of charges such as child molesting might carry "such a stigma that trying it with others might be unduly prejudicial," but that such was not the case here. *Id.* at 35. Rather, the court explained:

I've got two incidents close in time, two different days, very clear charges, I mean I think they'll understand the case, they understand that the [S]tate's got to prove the events on the 13th and on the 16th. I don't see anything about this that number one is going to be confusing to them, or difficult for them or I don't see any prejudice where they're just going to lump everything together.

*Id.* Given these facts and circumstances, the trial court determined it would be appropriate to try the charges associated with July 13 and 16 together, and it denied the motion for severance. I find no abuse of discretion in the trial court's decision.